UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

COMPOSITE RESOURCES, INC.,

               Plaintiff,

v.

RECON MEDICAL, LLC,

               Defendant.

Case No. 2:17-cv-01755-MMD-VCF

ORDER

This Order addresses the disputed claim terms presented to the Court for construction in connection with the patent infringement claim filed by Composite Resources, Inc. ("CRI"). The Court has reviewed the Joint Opening and Supplemental Briefs (ECF Nos. 67, 68), CRI's claim construction brief (ECF No. 69), Recon Medical, LLC's ("Recon") responsive brief (ECF No. 70), and CRI's reply brief (ECF No. 71). The Court also held a hearing on March 15, 2018 ("the Hearing"). (ECF No. 78.)

I.    **BACKGROUND**

CRI initiated this patent infringement action on January 27, 2017. (ECF No. 1.) Defendant offers for sale certain tourniquets that CRI alleges infringe its patents, which are entitled "Tourniquet and Method of Use" (U.S. Patent Nos. 7,842,067 ("the '067 patent"), 7,892,253 ("the '253 patent"), and 8,888,807 ("the '807 patent")).[1] (*Id.*) CRI alleges that Recon has infringed: claims 1 through 11 and 15 through 17 of the '067

---

[1]A copy of the '067, '253, and '807 patents were filed with the Complaint. (ECF Nos. 1-1, 1-2, 1-3.) These patents were filed again with the parties' briefs (*see* ECF No. 69-1 at 2-17, 19-36, 38-53; ECF Nos. 70-1, 70-2). The Court cites to them interchangeably throughout this Order.

patent (ECF No. 69 at 5); claims 1 through 5 and 8 through 11 of the '253 patent (*id.* at 10); and claims 1, 3, 4, 6, 8 through 20, and 22 through 30 of the '807 patent (*id.* at 14). The patents cover both a tourniquet and a method for restricting the flow of blood in a body part.

## II.    LEGAL STANDARD

The purpose of claim construction is to determine the meaning and scope of the patent claims alleged to be infringed. *See O2 Micro In'tl Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Patent claim construction is a question of law for the Court. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). When interpreting claims, a court's primary focus should be on the intrinsic evidence of record, which consists of the claims, the specification, and the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-17 (Fed. Cir. 2005) (en banc). The court should begin by examining the claim language. *Id.* at 1312. Claim language should be viewed through the lens of a person of "ordinary skill in the relevant art at the time of the invention." *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1283 (Fed. Cir. 2005). If the claim language is clear on its face, then consideration of the other intrinsic evidence is limited "to determining if a deviation from the clear language of the claims is specified." *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

A court should give the claim's words their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312-13 (quotation omitted). In construing a claim term's ordinary meaning, the context in which a term is used must be considered. *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003). Both asserted and unasserted claims of the patent also can add meaning to a disputed claim term as claim terms normally are used consistently throughout the patent. *Phillips*, 415 F.3d at 1314.

"[C]laims must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quotation omitted). The specification can offer "practically incontrovertible directions about a claim meaning." *Abbott Labs. v. Sandoz, Inc.*, 566

F.3d 1282, 1288 (Fed. Cir. 2009). "When consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification." *Id.* "[A]lthough the specification may well indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into claims when the claim language is broader than such embodiments." *Tate Access Floors, Inc. v. Maxcess Techns., Inc.*, 222 F.3d 958, 966 (Fed. Cir. 2000) (quotation omitted). "By the same token, the claims cannot enlarge what is patented beyond what the inventor has described in the invention." *Abbott Labs.*, 566 F.3d at 1288 (internal quotation omitted). "Likewise, inventors and applicants may intentionally disclaim, or disavow, subject matter that would otherwise fall within the scope of the claim." *Id.* at 1288.

In addition to the specification, a court should consider the patent's prosecution history, which consists of "the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. However, because the prosecution history represents an "ongoing negotiation" rather than the "final product" of the negotiation, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Consulting the prosecution history can, however, be helpful in determining whether the patentee disclaimed an interpretation during prosecution. *See Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d 1290, 1296 (Fed. Cir. 2005). "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006).

If the claim language is not clear after reviewing all intrinsic evidence, then the Court may refer to extrinsic evidence such as expert testimony, inventor testimony, dictionaries, and learned treatises. *See Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1414 (Fed. Cir. 2000).

///

III.    DISCUSSION

The parties have narrowed the contested claim terms to five sets:[2] (1) the continuous-related terms; (2) planar transition areas; (3) elevation transition areas; (4) pocket; and (5) phrases including the term gap. (*See generally* ECF No. 98.) The parties also dispute whether "body part" is a claim limitation of the patents. Summaries of the parties' proposed constructions of each disputed term are presented in comparison charts below. The Court addresses each of the disputed term sets in turn.

A.    Continuous-related terms

The parties dispute the meaning of the continuous-related terms as found in claim 1 of the '067 patent and claims 1, 13 and 17 of the '807 patent. (ECF No. 70 at 9.)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| The inner strap member is attached to the end of the outer sleeve and extends to the buckle and back to form a loop | Includes a loop that has no end |

CRI argues that "continuous" "means continuous as between the two ends of the element forming the loop." (ECF No. 92 at 12.) Recon argues that the continuous-related terms "include a loop that has no end" and that this construction is supported by the specification and prosecution history of the '067 patent. (ECF No. 70 at 8-9.) Based on the claim language, the Court adopts CRI's proposed construction.

CRI argues that the inner strap has two ends and forms a loop that continuously runs from the outer end to the buckle and back. (*See* ECF No. 69 at 17.) Recon takes issue with this construction, however, because the word "continuous" as used in claims 1, 13, and 17 of the '807 patent would be written out of the claim language in order to be consistent with claim 11 of the '067 patent. (ECF No. 70 at 9.) However, the claims of

---

[2]Recon's responsive brief organized the disputed terms into seven groups (ECF No. 70 at 6), and CRI agreed with the reorganization (ECF No. 92 at 4-5). At the hearing, the Court ordered that the parties submit a supplemental brief identifying support in the intrinsic record for the reorganization. (*Id.*) The Court has reviewed the supplemental brief (ECF No. 98) and is satisfied that the intrinsic record supports this reorganization.

the patent are clear that the loop has an end—in fact it has two ends—and therefore Recon reads a limitation into the claim that is not there. The Court agrees with CRI that "Recon's construction implies an infinite or never ending loop—a circle with no beginning and no end." (ECF No 71 at 4.)

The Court therefore adopts CRI's proposed construction and finds that the continuous-related terms mean that "the inner strap member is attached to the end of the outer sleeve and extends to the buckles and back to form a loop."

### B. Planar Transition Area

The parties dispute the meaning of the term "planar transition area" as found in claim 1 of the '253 patent. (ECF No 70 at 11.)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| A portion of the buckle between the plane of the top of the intermediate bar and the planes of ends of the buckle substantially parallel to the lateral sides | A flat surface defined between the top surface of the intermediate bar and the [first/second] end of the buckle |

Recon argues that CRI's construction violates "usual grammatical rules" and contends that "planar" modifies the noun "area." (ECF No. 70 at 11-12.) CRI argues that in looking to the prosecution history, it expressly identified the planar transition areas on figure 20, and these areas are "substantially parallel to the first lateral side." (ECF No. 71 at 5.) The relevant use of "planar transition area" states:

> Wherein the top surface of the intermediate bar is elevated with respect to the first and second ends of the buckle, with a first planar transition area between the top surface of the intermediate bar and the first end, and with a second planar transition area between the top surface of the intermediate bar and the second end, wherein the first and second planar transition areas are substantially parallel to the first lateral side.

(ECF No. 70-2 at 18). At the Hearing, the parties' dispute turned on whether this area—which both parties agreed was in the same location—is flat. (*See* ECF No. 92 at 25-29.) While CRI argued that reading flatness into the claim adds a limitation that is not supported by the patent language itself, Recon argued that the prosecution history demonstrates the addition of "planar transition areas" was made to gain allowances but

did so without clarifying the actual configuration of this area. (*See id.* at 35-36.) Recon therefore argues that this lack of clarification in the claim language, patent specification, and prosecution history requires the Court to look to extrinsic evidence to figure out the meaning of "planar." (*Id.*; *see also* ECF No. 70 at 13-14 (citing *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("When the intrinsic evidence is silent as to the plain meaning of a term, it is entirely appropriate for the district court to look to dictionaries or other extrinsic sources for context—to aid in arriving at the plain meaning of a claim term.").) The Court agrees that neither the patent itself nor the prosecution history elucidate the meaning of "planar transition area."

First, the specification of the '253 patent does not include the phrase "transition area." (*See generally* ECF No. 70-2 at 14-18.) Second, neither the addition of "planar transition area" to Claim 1 nor the patent examiner's reasons for allowing the term to be added to the claim language of Claim 1 provide any insight into what "planar transition area" actually means. (*See* ECF No. 70-12 at 4.) Turning to the extrinsic evidence provided by the parties, CRI provides dictionary excerpts for the nouns "transition" and "area." (*See* ECF No. 69-1 at 63, 65.) Because CRI chose to use the noun "transition" as opposed to the adjective "transitional," the Court views "transition area" as a compound noun. On the other hand, "planar" is an adjective and is defined in the fourth edition of Webster's New World College dictionary as "of or pertaining to a point on a surface at which the curvature is zero," and "of or lying in one plane" where "plane" means "flat; level; even." (ECF No. 70-6 at 6.) Similarly, the third edition of the American Heritage dictionary defines "planar" as "having a two-dimensional quality." (ECF No. 70-7 at 6.) Because "planar" is an adjective that modifies the compound noun "transition area," the Court agrees with Recon that this area has the quality of being "flat" or even.

The Court therefore adopts Recon's proposed construction of "planar transition area" as "a flat surface defined between the top surface of the intermediate bar and the [first/second] end of the buckle."

///

## C. Elevation Transition Area

The parties dispute the meaning of the term "elevation transition areas" as used in claim 9 of the '253 patent. (ECF No. 70-2 at 19.)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| A portion of the buckle between the plane of the top of the intermediate bar and the planes of the ends of the buckle | A surface spanning the difference in height between the top surface of the intermediate bar and an end of the buckle |

CRI argues that the plain and ordinary meaning of "elevation transition area" is "portion of the buckle between the plane of the top of the intermediate bar and the planes of the ends of the buckle." (ECF No. 69 at 13.) It relies on the specification of the '253 patent and also points to extrinsic evidence of the dictionary definitions of elevation, elevate, transition, and area. (*Id.* at 13.)

Recon takes issue with CRI's failure to include any reference to elevation in its proposed construction as well as CRI's apparent equivocation of the phrases "elevation transition area" with "planar transition area." (ECF No. 70 at 14-15 (citing *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987)) ("This construction violates the presumption that there is 'a difference in meaning and scope when different words or phrases are used in separate claims.'").) Recon argues that the Court should consider extrinsic evidence of the dictionary definition for elevation, specifically "the height of a thing [above][3] a reference level," which supports Recon's inclusion of the phrase "difference in height." (*Id.* at 15 (citing ECF No. 70-7 at 5).) CRI counters that Recon's proposed construction "introduces a potential for confusion, specifically where to determine the 'difference in height.'" (ECF No. 71 at 6.)

The Court disagrees with CRI. CRI states that the patent specification supports its definition—specifically in the '253 patent where it states that "the top surface 102 of the intermediate bar 98 is elevated relative to the first end 118 and the second end 122 of the buckle." (ECF No. 69-1 at 34.) But this statement in the specification of the '253

---

[3]Recon uses the term "about" but the dictionary definition it relies on clearly uses "above." (*See* ECF No. 70-7 at 5.) The Court therefore assumes Recon meant to use the term "above" in its definition of "elevation."

patent does not support CRI's construction, as there is no indication that the "planes of the end of the buckle" is synonymous with "end of the buckle."

The Court therefore adopts Recon's construction of "elevation transition area" as "a surface spanning the difference in height between the top surface of the intermediate bar and an end of the buckle."

**D. Pocket**

The parties dispute the construction of "pocket" as used in claim 17 of the '067 patent and claim 1 of the '253 patent. (ECF No. 70 at 18.)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Compartment, hollow or cavity | A cavity formed by a single piece of material that is folded over and seamed |

This dispute focuses on whether a pocket is limited to a cavity formed by "a single piece of material that is folded over and seamed." Based on the claim language, the Court finds no such limitation. The claim language states in relevant part:

> A tourniquet for restricting a flow of blood in a body part, the tourniquet *comprising*
>
> > (a) A first elongated member *comprising*
> >
> > > (i) A surface comprising both hook and loop structures;
> > >
> > > (ii) . . .; and
> > >
> > > (iii) A pocket.

(ECF No. 70-1 at 16-17 (emphasis added). Recon argues that the second transitional phrase (i.e., "comprising") modifies "first elongated member"[4] and should state a minimum of what is required of the first elongated member. (ECF No. 70 at 19 (citing *Novartis Vaccines & Diagnostics, Inc. v. Wyeth*, No. 08-67, 2011 WL 1576935, at *6-*7 (E.D. Tex. April 26, 2011)).) Recon therefore argues that "pocket" is a required modification of "a long narrow strip of material such as a strap," seemingly implying that

---

[4]The parties agreed that "first elongated member" should be construed to mean "[a] long narrow strip of material such as a strap." (ECF No. 68 at 2.)

the pocket may be made only of the long narrow strip of material. (*See* ECF No. 70 at 19-20.) Recon further argues that because the specification states that "the outer sleeve 14 may be formed of a single piece of material, as by way of example and not limitation, a piece of material that is folded over and seamed, thereby forming a pocket or inner space," its construction comports with both the language of the claim and the specification. (*Id.*)

However, this reads a limitation into the claim language that on its own does not include this explicit limitation. Moreover, the specification's use of "may be formed" lends support to CRI's contention that the construction of "pocket" is merely "compartment, hollow, or cavity." (*See* ECF No. 69 at 9.) The Court therefore agrees with CRI's construction as to the term "pocket."

**E. Phrases including the term "Gap"**

Recon argues that phrases involving the term "gap" are invalid as indefinite in violation of 35 U.S.C. § 112. (ECF No. 70 at 20.) "Gap" is found in claims 7, 5, and 17 of the '067 patent.

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain meaning: a separation in space; a break in continuity | Indefinite<br><br>In the alternative: a continuous space between the outer surfaces of the [outer sleeve/first elongated member] disposed adjacent to the [buckle/means for looping] on the [buckle/means for looping's] external side.<br><br>Or construing gap in part: a continuous space between the outer sleeve/means for circumferentially surrounding |

Recon argues that CRI failed to identify any specific area as the gap and that, in looking at Figure 5 of the '067 patent, there appears to be three possible gaps. (ECF No. 70 at 21.) However, based on the claim language and specification, the Court adopts Plaintiff's proposed construction that "gap" refers to a "separation in space."

Claims 7 and 17 of the '067 patent describe a "gap" as existing between the portions of the second elongated member or inner strap. (ECF No. 70-1 at 16.) Figure 5 clearly shows a space between the portions of the second elongated member on the left hand side of the buckle. (*See id.* at 5.) By contrast, the left hand side of the buckle itself is between portions of the first elongated member and the buckle itself is also between portions of the second and first elongated members on the right hand side of the buckle. (*See* ECF No. 70 at 21.)

The Court therefore accepts CRI's plain meaning construction of "gap" as a "separation in space."

## F. Body Part

The parties have agreed on the definition of "body part," but they dispute whether "body part" is an element or limitation of the claims. Recon insists that "body part" is found throughout the asserted claims and is therefore a limitation. (ECF No. 70 at 4.) CRI counters that because "body part" appears in the preamble and states the purpose or intended use of the invention disclosed, the term is not a claim limitation, and to the extent "the body part" appears in the claims it is merely referring to "a body part" found in the preamble. (ECF No. 69 at 4; ECF No. 71 at 2-3.) The Court agrees with Recon.

"[A] claim preamble has the import that the claim as a whole suggests for it." *Bells Comm. Res. Inc. v. Vitalink Comm. Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995). "If the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is necessary to give life, meaning, and vitality to the claim, then the claim preamble should be construed as if in the balance of the claim." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) (internal quotation marks omitted). However, if "the body of the claims fully and intrinsically sets forth the complete invention, including all of its limitations, and the preamble offers no distinct definition of any of the claimed invention's limitations, but rather merely states, for example, the purpose or intended use of the invention, then the preamable is of no significance to claim construction because it cannot be said to

constitute or explain a claim limitation." *Id.* (citing *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)).

Here, the preamble does not present any distinct definition of "body part" and is of no import to construction of this term. By way of example, claim 7 of the '067 patent states:

> A tourniquet for restricting a flow of blood in a *body part*, the tourniquet comprising:
> …
> (b) a second elongated member, wherein prior to contacting the first elongated member to the *body part*, at least a portion of the second elongated member is anchored to a first end of the first elongated member and at least partially contained within the first elongated member, the second elongated member configured to slidably engage at least a portion of the first elongated member;
> …
> (d) a buckle connected to the first elongated member and the second elongated member, wherein a gap is located between portions of the second elongated member at the buckle when applied to the *body part*
>
> Wherein a radial compressive force is applied to the body part upon applying a tensile force to the second elongated member by rotating the windlass and twisting the portion of the second elongated member, wherein the radial compressive force restricts the flow of blood in the *body part*, and wherein an overlapped portion of the second elongated member between a tip of the first elongated member and the buckle when applied to the *body part* tends to not slip within the first elongated member when the tensile force is applied to the second elongated member.

(ECF No. 70-1 at 16 (emphasis added).)  The Court finds that the body of the claims "fully and intrinsically" sets forth the entire invention, including the limitation that the apparatus and method be employed on a body part, such that the preamble's use of "body part" is of no significance to the term's construction. The Court therefore agrees with Recon that "body part" is a claim limitation.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Court's construction of the disputed claim terms.

///

DATED THIS 5th day of September 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE