UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

COMPOSITE RESOURCES INC.,

     Plaintiff/Counter Defendant,

v.

RECON MEDICAL LLC,

     Defendant/Counter Claimant.

Case No. 2:17-cv-01755-MMD-VCF

ORDER

## I.  SUMMARY

This is a patent, trademark, and unfair competition case about tourniquets used to stop the flow of blood to a body part when that body part is severely injured. Before the Court are Defendant/Counter Claimant Recon Medical LLC's ("Recon") motions for summary judgment as to the patents-in-suit's invalidity (ECF Nos. 111, 112), and noninfringement of the patents-in-suit (ECF No. 113), along with Plaintiff/Counter Defendant Composite Resources Inc.'s ("CRI") motion for summary judgment on its patent, trademark, and unfair competition claims (ECF No. 114).[1] As further explained below, the Court will deny Recon's motions except as to all but one of CRI's indirect patent infringement allegations, for which the Court will grant summary judgment to Recon. The Court will also grant summary judgment to CRI as to its trademark and federal unfair competition claims, but deny CRI summary judgment on its patent and state unfair competition claims.

///

---

[1] The Court has reviewed the various responses, replies and other documents associated with these motions. (ECF Nos. 115, 117, 118, 126, 127, 128, 129, 132, 134, 136, 137, 138, 139.)

## II.    BACKGROUND

CRI initiated this suit on January 27, 2017. (ECF No. 1.) It was later transferred to this Court from the District of South Carolina. (ECF No. 28.) CRI's high-level allegation is that Recon sells counterfeit copies of CRI's tourniquets under the Recon brand name, while also using at least one of CRI's trademarks to advertise them. This allegation breaks into patent, trademark, and unfair competition claims.

More specifically, Recon offers for sale certain tourniquets that CRI alleges infringe its patents, which are entitled "Tourniquet and Method of Use" (U.S. Patent Nos. 7,842,067 ("the '067 patent"), 7,892,253 ("the '253 patent"), and 8,888,807 ("the '807 patent")). (ECF No. 106 at 6-10.) The patents cover a method and a tourniquet for restricting the flow of blood in a body part, along with a method of making such a tourniquet. (ECF No. 114 at 12-19.) CRI also alleges that Recon infringes its trademark, U.S. Trademark Registration No. 3,863,064, covering the phrase Combat Application Tourniquet (the "Combat Application Tourniquet Mark"). (*Id.* at 3, 20-22.) CRI further alleges Recon engages in unfair competition in violation of 15 U.S.C. § 1125(a). (*Id.* at 22-23.) In addition, CRI alleges Recon's trade practices violate South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20, *et seq.* ("SCUTPA"). (*Id.* at 12-13.)

As to CRI's patent infringement claims, CRI alleges that Recon infringes: claims 1 through 11 and 15 through 17 of the '067 patent (ECF No. 114 at 12); claims 1 through 5, and 8 through 12 of the '253 patent (*Id.* at 14); and claims 1 through 4, 6, 8 through 20, and 22 through 30 of the '807 patent (*id.* at 18).

As to CRI's trademark infringement claims, CRI alleges that Recon advertises its tourniquets on both its website and Amazon's marketplace using the Combat Application Tourniquet Mark, and provided an insert with each tourniquet Recon sold for some time, which also used the Combat Application Tourniquet Mark. (ECF No. 106 at 4-5.) CRI further alleges that Defendant's tourniquets are virtually identical to CRI's tourniquets, and are sold to the same class of consumers, and through the same channels, as CRI's

tourniquets. (*Id.* at 5.) CRI alleges that all of this causes consumer confusion. (*Id.*) CRI further alleges that this confusion harms CRI because consumers will associate CRI with any issues caused by Recon's tourniquets, which, given the nature of the products, could be severe, resulting in injury or death. (*Id.*)

CRI's federal and state unfair competition claims rely in part on CRI's allegations of patent and trademark infringement. (*Id.* at 11-13.) CRI's SCUTPA claim also contains the allegation that Recon's allegedly counterfeit tourniquets harm the public because they are of lower quality, and have not undergone the same safety testing, as CRI's tourniquets. (*Id.* at 12.) Therefore, CRI alleges, the public is harmed when it buys Recon's tourniquets thinking they are CRI's, but ends up getting hurt because Recon's products are less effective. (*Id.*)

The Court previously construed certain disputed terms in the patents-in-suits' claims. (ECF No. 103.) Following further briefing from the parties, the Court reconsidered its decision on the phrase "body part," finding that it is not a claim limitation, either in the preambles of the asserted patents (ECF No. 124), or as used throughout the asserted claims (ECF No. 140). The latter order issued as the parties were briefing their summary judgment motions now before the Court. Recon acknowledges that the Court's reconsideration of "body part" renders much of its summary judgment motion as to noninfringement moot. (ECF No. 137 at 2.) Therefore, the Court does not address herein Recon's argument that it does not infringe the asserted patents because it does not supply body parts to its customers. (ECF No. 113 at 5, 13-15.)

The Court heard oral argument, where the parties were directed to focus on the patent and trademark infringement aspects of CRI's summary judgment motion, on June 26, 2019 (the "Hearing"). (ECF No. 150.) Finally, the Court notes that CRI submitted actual tourniquets as exhibits to its motion for summary judgment: two of CRI's, and two of Recon's. (ECF Nos. 115-6, 115-7, 115-8, 115-9.) The Court reviewed and considered these tourniquets in ruling on the pending motions.

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations

4

1   omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position
2   will be insufficient." *Anderson*, 477 U.S. at 252.

3       Further, "when parties submit cross-motions for summary judgment, '[e]ach motion
4   must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v.*
5   *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *William W. Schwarzer, et al.*,
6   *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb.
7   1992)) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the
8   court must review the evidence submitted in support of each cross-motion." *Id.*

9   **IV.     RECON'S INVALIDITY MOTION (ECF NOS. 111, 112)**

10      Recon's argument that the '067 and '807 patents are invalid because a version of
11  CRI's tourniquet was on sale more than one year prior to the proper critical date of these
12  patents has a few components. (ECF No. 112.)[2] First, Recon argues early versions of
13  CRI's tourniquets practice the inventions set forth in the asserted claims of these patents
14  because of CRI's statement in its initial contentions that "CRI's Combat Application
15  tourniquet practices the claimed inventions set forth in" those claims. (*Id.* at 9.) While
16  Recon concedes it is not sure what generations of the tourniquet practice the claimed
17  inventions, it asserts the tourniquets did not change between generations. (*Id.* at 9-10.)

18      Second, Recon argues that neither the '067 nor the '807 patent are entitled to the
19  priority date of the provisional applications they claim priority to, because the applicable
20  provisional application did not adequately disclose the inventions embodied in the
21  corresponding patent. (*Id.* at 15-26.) Instead, Recon argues "the '067 and '807 Patents
22  must each be limited in their priority claims to the dates on which the respective
23  applications from which those patents issued were filed." (*Id.* at 26.) Because those dates
24  are later than the date when the patents' inventor Mark Esposito sold and otherwise made

25  _____

26      [2]Recon filed two versions of its invalidity summary judgment motion: one under seal
    (ECF No. 111), and a redacted version (ECF No. 112). Similarly, ECF No. 111 contains a
27  full set of sealed exhibits, while certain of ECF No. 112's exhibits are redacted. The
    documents are otherwise identical and constitute a single motion. The Court cites to ECF
28  No. 112 herein, though it has also reviewed the sealed contents of ECF No. 111.

available early versions of his tourniquets, Recon insists the patents are invalid under 35 U.S.C. § 102(b). (*Id.* at 6, 8.) Alternatively, Recon seeks a declaration (phrased as partial summary judgment) that the '067 and '807 patents are limited in their priority claims to the dates on which the respective applications from which those patents issued were filed. (*Id.* at 29.)

CRI counters in relevant part that genuine issues of material fact preclude summary judgment on invalidity because Recon fails to establish by clear and convincing evidence that a particular version of Mr. Esposito's early tourniquets practiced each limitation of any specific claim of the '067 and '807 patents. (ECF No. 126 at 2.)[3] For this reason, CRI argues, Recon's extensive analysis of the appropriate critical date of the two patents is irrelevant, and Recon's desired alternative relief of a declaration as to these patents' critical dates is merely an unnecessary advisory opinion. (*Id.*)

The Court agrees with CRI. Recon's proffered evidence does not establish that a particular early version of CRI's tourniquets is invalidating prior art. Recon bears the burden of establishing the '067 and '807 patents' invalidity by clear and convincing evidence. *See, e.g.*, *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008) ("[T]he party asserting invalidity[] must still show by clear and convincing evidence that the asserted patent is invalid."). Further, Recon, "having the ultimate burden of proving its defense of invalidity based on anticipating prior art, then has the burden of going forward with evidence that there is such anticipating prior art[.]" *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008). Where, as here, the party asserting invalidity offers insufficient evidence of anticipating prior art, the analysis ends. *See, e.g.*, *Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc.*, 282 F. Supp. 3d 793, 805-6 (D. Del. 2017).

///

---

[3]Like Recon, CRI filed two versions—one sealed (ECF No. 128), and one redacted (ECF No. 126)—of its response to Recon's invalidity summary judgment motion. The Court cites herein to the redacted version, though it also reviewed the sealed version.

The issue with Recon's invalidity motion is it is unclear exactly which generation of Mr. Esposito's early tourniquets Recon contends constitutes anticipating prior art, and whether those generations of early tourniquets differ in any material way. Recon asserts they do not materially differ, but only points to evidence that either equivocates or tends to show the contrary. (*Compare* ECF No. 112 at 8 (citing ECF No. 112-9) *with* ECF No. 112-9 (containing many statements to the effect that the early generations of tourniquets differed from each other); *see also* ECF No. 126 at 6-8 (making this argument).) Thus, Recon has failed to show how any particular version of Mr. Esposito's early tourniquets meets all limitations of one of the '067 and '807 patents' asserted claims. (ECF No. 112 at 26-28.) Whether a particular early generation of Mr. Esposito's tourniquets constitutes anticipating prior art is a factual question—one that Recon has failed to meet its initial burden to answer with the evidence it presented to the Court. *See Tech. Licensing Corp.*, 545 F.3d at 1327 (explaining Recon's burden). Unable to resolve this key factual question with the evidence Recon proffered in its invalidity motion, the Court need not address Recon's extensive argument as to the appropriate critical date of the '067 and '807 patents. *See, e.g.*, *PowerOasis*, 522 F.3d at 1305 (explaining the patent office also takes this sensible approach). The Court will therefore deny Recon's motion for summary judgment as to invalidity.

## V.     RECON'S NONINFRINGEMENT MOTION (ECF NO. 113)

Much of Recon's noninfringement summary judgment motion is moot in light of the Court reconsideration of the proper construction of "body part," but three of Recon's arguments from the motion remain. (ECF No. 137 at 2-6.) The Court will address all three arguments, in turn, below. Because the Court is persuaded by one, but unpersuaded by Recon's two other remaining arguments, the Court will grant in part and deny in part Recon's noninfringement motion.

First, Recon argues it is entitled to summary judgment on CRI's indirect infringement claims as to asserted claims 1-11 and 15-17 of the '067 patent, and claims

1-5, and 8-11, of the '253 patent because CRI only included a boilerplate assertion in its infringement contentions that "Defendant is contributing to or inducing infringement by such users" as these claims. (*Id.* at 2-4.) The Court agrees with Recon on this point. In fact, CRI's statement in its infringement contentions went further—only alleging indirect infringement as to these claims if the Court decided "body part" was a necessary element of these claims. (ECF No. 76-1 at 2-3, 19-20; *see also* ECF No. 114 at 10-11.) Because the Court ultimately agreed with CRI that "body part" is not a claim limitation (ECF Nos. 124, 140), CRI's indirect infringement allegations as to these claims are moot—as CRI effectively acknowledges in its infringement contentions. CRI's counsel also conceded as much at the Hearing with respect to the '253 patent. CRI may proceed on its direct infringement allegations as to these asserted claims, but the Court will grant summary judgment to Recon on these claims to the extent CRI alleges indirect infringement of them.

Further, the Court assigns some persuasive weight to Recon's reliance on cases interpreting the Local Patent Rules of the Northern District of California, which can be broadly read to support the proposition that indirect infringement allegations must be sufficiently detailed to pass muster under those rules. (ECF No. 137 at 3.) This District has an analogous rule, LPR 1-6(d), which requires "a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." LPR 1-6(d). CRI did not provide a detailed description of the acts it alleges constitute indirect infringement in its infringement contentions. (ECF No. 76-1 at 2-3, 19-20.) This lack of detail in noncompliance with LPR 1-6(d) further underlines the lack of any dispute of material fact as to indirect infringement of these claims, a theory that it does not appear CRI is even pursuing in light of the Court's construction of "body part."

However, claim 12 of the '253 patent is an exception to the discussion above. In CRI's amended infringement contentions, CRI alleged that "[c]laim 12 of the '253 patent is indirectly infringed by Defendant, as Defendant induces or contributes to a user of the tourniquet device engaging in the method of restricting flow to a body part when the device

is used." (ECF No. 76-1 at 20.) CRI's counsel similarly made clear at the Hearing that CRI is pursuing an indirect infringement theory as to claim 12. Thus, CRI has consistently alleged with reasonable specificity that Recon indirectly infringes claim 12 of the '253 patent.

In addition, the Court is unpersuaded by Recon's argument as to why it is otherwise entitled to summary judgment on claim 12 of the '253 patent. Recon contends CRI has not presented specific evidence of infringement—testimony from Recon's product's users that they used Recon's product in an infringing manner, or survey evidence establishing as much. (ECF No. 137 at 3-4.) CRI counters that it only needs to provide facts sufficient to allow an inference that at least one direct infringer exists, and points to: (1) an instruction sheet Recon provided with its tourniquets to its customers that, when followed, would mean Recon's customers infringed claim 12 of the '253 patent; and (2) deposition testimony and emails from Recon's Fed. R. Civ. P. 30(b)(6) witness that CRI contends shows Recon's customers infringed claim 12. (ECF No. 127 at 2-4.) A reasonable jury could infer from the instructions provided to Recon's customers that Recon would indirectly infringe claim 12 of the '253 patent when Recon's product's users used Recon's product in line with the instructions. (*Compare* ECF No. 115-17 *with* ECF No. 113-4 at 18-19.) Similarly, Recon's 30(b)(6) witness' admission that Recon imported and distributed some tourniquets with the strap routed through the buckle could also support an inference of indirect infringement of claim 12 of the '253 patent. (ECF No. 129-1 at 12.) Therefore, the Court will deny Recon's summary judgment motion as to noninfringement of claim 12 of the '253 patent.

Recon additionally, and separately, argues it is entitled to summary judgment on CRI's claim that Recon infringes the '807 patent under 35 U.S.C. § 271(g) because CRI has not sought any discovery from Recon's Chinese manufacturer as to how Recon's products are assembled. (ECF No. 137 at 4-6.) CRI responds it does not need to visit Recon's Chinese manufacturer to learn how Recon's tourniquets are made, instead, the

1　jury could infer from inspecting Recon's tourniquets how they are made. (ECF No. 127 at

2　4.) CRI further provides a claim chart to this effect. (*Id.* at 5-6.) The Court again agrees

3　with CRI. It is possible for the jury to determine from inspecting Recon's tourniquets

4　whether they infringe at least representative claim 1 of the '807 patent. Given the products'

5　relative simplicity, a reasonable person could determine how the allegedly infringing

6　tourniquets were assembled from a visual inspection.

7　　　In sum, the Court will grant in part, and deny in part, Recon's noninfringement

8　summary judgment motion. It will grant Recon summary judgment that it does not indirectly

9　infringe asserted claims 1-11 and 15-17 of the '067 patent and claims 1-5 and 8-11 of the

10　'253 patent, but deny Recon's noninfringement summary judgment motion in all other

11　respects, specifically including Recon's argument as to claim 12 of the '253 patent.

12　**VI.　CRI'S MOTION (ECF NO. 114)**

13　　　CRI moves for summary judgment as to its patent infringement, trademark

14　infringement, and unfair competition claims. The Court addresses below each component

15　of CRI's motion in turn.

16　　　**A.　Patent Infringement**

17　　　The Court finds CRI has not carried its initial burden to show Recon infringes CRI's

18　patents, and will therefore deny CRI's motion as to its patent infringement claims.

19　　　"Infringement is a two-step inquiry, in which a court must first construe disputed

20　claim terms, and then compare the properly construed claims to the accused device."

21　*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1367-68 (Fed. Cir. 2005)

22　(citation omitted). The first step as to CRI's allegations that Recon's products infringe the

23　asserted claims is already complete: the Court has construed the disputed claim terms.

24　(ECF Nos. 103, 124, 140.) Thus, the question before the Court is whether Recon's

25　accused products infringe at least one of CRI's asserted claims. *See Grober v. Mako*

26　*Prod., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012) ("[A] patent is infringed if a single claim

27　is infringed."). CRI bears the burden of persuasion as to infringement and must therefore

28

prove all facts necessary to support its infringement claim. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198 (2014) ("It is well established that the burden of proving infringement generally rests upon the patentee.").

"Infringement is a question of fact." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1040 (Fed. Cir. 2016) (citation omitted). Nevertheless, it is possible to establish infringement at the summary judgment phase when "[t]here is no factual dispute" as to infringement. *See Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1429 (Fed. Cir. 1997) (affirming district court's grant of summary judgment on direct infringement). But it is unusual for a court to make an affirmative patent infringement finding at the summary judgment phase:

> A district court should approach a motion for summary judgment on the fact issue of infringement with great care. Summary judgment may, however, properly be decided as a matter of law when no genuine issue of material fact exists and no expert testimony is required to explain the nature of the patented invention or the accused product or to assist in their comparison.

*Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1557-58 (Fed. Cir. 1996) (citations omitted) (affirming summary judgment of noninfringement).

Recon's counsel acknowledged at the Hearing that Recon has no purely factual basis for opposing CRI's summary judgment motion on its patent infringement claims. Instead, Recon makes several arguments, some best characterized as purely legal, and some legal arguments that have a procedural and evidentiary component. As explained below, the Court agrees with Recon that, viewing the evidence in the light most favorable to Recon and drawing all inferences in its favor, summary judgment is not warranted.

In broad strokes, Recon's purely legal argument is that it cannot directly infringe many asserted claims of the patents-in-suit—or that those claims are invalid—because they require that the end user of Recon's tourniquet take some action. (ECF No. 132 at 8-15.) CRI responds that Recon's products must only be capable of infringing CRI's patents when used for Recon to be considered a direct infringer. (ECF No. 134 at 8-9.) CRI relies on cases including *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108

(Fed. Cir. 2002) ("*Fantasy Sports*"), in which the Federal Circuit analyzed claims analogous to the claims at issue in this case. (ECF No. 134 at 8-9.) The Court agrees with CRI.

The plaintiff in *Fantasy Sports* was the owner by assignment of a patent directed to a method of and apparatus for playing a fantasy football game on a computer. *See* 287 F.3d at 1111. The defendants in that case also offered computerized fantasy football games. *See id.* at 1112. The *Fantasy Sports* court found in relevant part that one of the defendants was capable of directly infringing the asserted patent because, while the defendant's program was not configured by default to award 'bonus points' as required by one of the asserted claims, it could be by one of the program's users. *See id.* at 1117-1119. As also relevant here, the Federal Circuit rejected the defendant's argument that it could not infringe because it did not play its own product, "but rather is operated by the users of that product on their own computers." *Id.* at 1119. Instead, the Federal Circuit noted, "[t]he claims only require that the software utilized to play fantasy football provide the ability to award 'bonus points,' as that term has been construed." *Id.* Thus, the pertinent defendant could be considered a direct infringer because it provided a product capable of infringing when used as intended by its users. *See id.*

The claims at issue in this case are analogous. For example, Recon argues it cannot infringe claim 7 of the '067 Patent because that claim requires the presence of a gap that is only present when a tourniquet is actually applied to a limb. (ECF No. 132 at 8-12.) But, having examined Recon's accused products, Recon cannot persuasively argue that such a gap is not present when one of its products is applied to a limb. (ECF No. 134 at 9 (making this argument).) Further, Recon's argument misses the point described above with reference to *Fantasy Sports*—Recon's product needs only be capable of infringing when used for Recon to directly infringe. Therefore, a claim requiring a gap can be infringed so long as a gap exists when the tourniquet is used.

In arguing that Recon cannot infringe many of CRI's asserted claims, Recon relied upon several cases that the Court finds distinguishable or not directly applicable to the claims at issue in this case. The Court briefly addresses those cases here. First, Recon relies on *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1305-6 (Fed. Cir. 2012) ("*Akamai*"). But the Federal Circuit's mandate was expressly recalled in *Akamai*. Further, the Court reads the portion of *Akamai* that Recon relies on to stand only for the proposition that an end user would normally be considered an infringer, not that the creator of the product could not be. *See id.*

Recon's counsel also mentioned two cases at the Hearing that the Court finds not directly applicable here. The opinions are *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004) ("*Chef America*") and *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) ("*IPXL*").[4] *IPXL* dealt with the question of indefiniteness in the context of invalidity, which makes it an imprecise fit in the context of CRI's summary judgment motion on infringement. Moreover, the Court finds both cases distinguishable.

In *IPXL*, as an issue of first impression, the Federal Circuit found a claim invalid as indefinite because it recited both a system and a method for using that system. *See* 430 F.3d at 1384. But the claim at issue in *IPXL* affirmatively required a third party to do something (*see id.* ("and *the user uses the input means*") (emphasis in original)), whereas the claims at issue here only explain how a component of the claimed apparatus should perform when it is used (*see, e.g.*, Claim 7 of the '067 Patent, "wherein a gap is located between portions of the second elongated member at the buckle when applied to the body part"). In *Chef America*, the Federal Circuit affirmed the district court's judgment of non-infringement of a patent essentially because the patent was poorly drafted—in a patent directed to baking dough, the relevant claim required that the dough, rather than the oven

---

[4]Recon's counsel only mentioned the cases by their name at the Hearing and did not provide a citation to the applicable federal reporter, so it is possible, but unlikely, the Court is not discussing the cases Recon's counsel intended to refer to. Recon did not rely on these cases in its briefing. Moreover, Recon raised both of these cases for the first time at oral argument, so it is somewhat unfair for the Court to consider them deeply now.

it was being heated in, be heated to such a high temperature it would inevitably burn the dough to a crisp. *See* 358 F.3d at 1373, 1376. The accused method did not heat the dough enough to infringe. *See id.* at 1372-73. Recon's counsel appeared to raise this case at the Hearing to make the argument that CRI was stuck with the poorly drafted claims making up its asserted patents, which are invalid because certain claims recite both an apparatus and a method of using it. But this argument would require the Court to agree with Recon's underlying argument that the asserted claims are invalid, which the Court has rejected as discussed above—at least considering the record as it stands at this point in this case.

However, the Court is ultimately persuaded by Recon's legal arguments with procedural and evidentiary components. Recon makes three. First, Recon argues that CRI's entire summary judgment motion should be denied because CRI's statement of undisputed material facts lacks sufficiently specific citations in violation of this district's local rules and Ninth Circuit precedent. (ECF No. 132 at 6-7.) Second, Recon argues that the Court should disregard the declarations CRI submitted in support of its motion because they are conclusory, identical, merely parrot the language of the asserted claims, and are expert declarations masquerading as those of lay witnesses. (*Id.* at 7-8.) Third, Recon argued at the Hearing that the Court needs expert testimony to determine whether its products infringe CRI's asserted claims. Of these arguments, the Court places more weight on the second and third, and is persuaded to deny the patent infringement component of CRI's summary judgment motion.[5]

---

[5]CRI's motion failed to comply with both this Court's local rules, and Ninth Circuit precedent, in that CRI's statement of undisputed material facts lacked specific record citations—as even CRI's counsel admitted at the Hearing. (ECF No. 114 at 3-9.) The Court could deny CRI's motion for summary judgment on this basis alone, but declines to do so here. *See* LR 56-1 (requiring citation to "the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence on which the party relies."); *Joe Hand Promotions, Inc. v. Steak*, Case No. 12-cv-1930, 2014 WL 1304723, at *2 (D. Nev. March 31, 2014) ("Courts in this district routinely decline to reach the merits of arguments made in connection with a 'summary judgment' filing which contains no statement of undisputed facts at all."); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774-5 (9th Cir. 2002) (stating that deposition testimony should be excluded solely because the party's citation to that testimony in its statement of undisputed facts failed to cite specific page and line numbers). This is because CRI's lack of specific citations in its

The Court first addresses the declarations CRI submitted in support of its summary judgment motion. (ECF Nos. 115-12, 115-13.) One (ECF No. 115-12) is from Mark Esposito, the named inventor of the patents-in-suit, and the other (ECF No. 115-13) is from Matt Cupelli, who works for the company that distributes CRI's tourniquets. Both contain claim charts comparing the asserted claims of the patents-in-suit to Recon's tourniquets, and conclude that Recon's tourniquets infringe. (ECF Nos. 115-12, 115-13.) However, as Recon points out (ECF No. 132 at 7-8), the claim charts attached to both declarations are virtually identical to each other, and to the claim charts included with CRI's initial infringement contentions. (*Compare* ECF Nos. 115-12, 115-13 *with* ECF No. 132-1.) Despite CRI's unpersuasive argument to the contrary (ECF No. 132 at 7), it is nevertheless unclear to the Court whether these declarations comply with the requirements of Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). More importantly, the Court agrees with Recon that these conclusory affidavits are insufficient on their own for CRI to carry its summary judgment burden. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 898-99 (1990) (finding district court properly excluded conclusory affidavit). The Court will not consider the declarations.

Once the Court sets aside the declarations, CRI has only proffered one other type of evidence in support of its motion for summary judgment—the tourniquets themselves. CRI argues that the "Court is well equipped to compare the asserted patent claims to the accused Recon devices and make factual determination of infringement." (ECF No. 134

---

statement of undisputed material facts was not so prejudicial to Recon as to prevent the Court from considering the merits of its claims. Overall, most of the facts included in CRI's statement of undisputed material facts (ECF No. 114 at 3-9) are either not reasonably in dispute (*see, e.g.*, *id.* at 8 (fact 24)), or supported by the record (*see, e.g.*, *id.* at 4 (facts 4, 5, 6)), and many of the exhibits CRI submitted in support of its summary judgment motion were also attached to its operative complaint (*see, e.g.*, *id.* at 8 (fact 22); *see also* ECF Nos. 106, 107 (including the exhibits attached to it).) Thus, Recon has been on notice of CRI's core factual contentions for some time, and has had time to prepare a response to them.

at 7.) But Recon's counsel argued at the Hearing that the Court would benefit from the testimony of competing experts, who would be helpful in resolving the factual question of infringement.

The Court agrees with Recon. The Court is reluctant to resolve the factual question of patent infringement, based on nothing more than its own examination of the accused devices, and without the benefit of expert testimony, particularly when the Court is required to view all facts and draw all inferences in the light most favorable to Recon as the nonmoving party. In comparing the asserted claims to Recon's accused tourniquets without the benefit of any other evidence, the Court would have to draw inferences to determine whether the accused tourniquets infringe. Without expert testimony, it would even be difficult for the Court to say *whether* it was drawing those inferences in Recon's favor, as the Court must at summary judgment—much less that it *was* drawing those inferences in Recon's favor. That would violate a key summary judgment principle. *See, e.g.*, *Kaiser Cement*, 793 F.2d at 1103 (stating that a court "must view the evidence and inferences therefrom in the light most favorable to the party opposing summary judgment.") (citation omitted). Thus, the tourniquets themselves, without other supporting evidence, constitute insufficient evidence to allow CRI to carry its initial summary judgment burden.

The Court is especially mindful that it "should approach a motion for summary judgment on the fact issue of infringement with great care." *Amhil*, 81 F.3d at 1557. Disregarding the proffered declarations, the Court finds CRI cannot satisfy its burden of demonstrating its entitlement to summary judgment as to its patent infringement claim. The Court will therefore deny the patent infringement portion of CRI's summary judgment motion.

## B. Trademark Infringement

CRI alleges that Recon infringes the Combat Application Tourniquet Mark, and moves for summary judgment on that claim, albeit in cursory fashion. (ECF No. 114 at 20-

22.) Recon opposes this portion of CRI's motion with the astute argument that CRI only alleges infringement of the Combat Application Tourniquet Mark, but proffers evidence of actual confusion regarding a different mark CRI owns, which is a stylized depiction of "CAT" (the "CAT Mark"). (ECF No. 132 at 18-20.) However, CRI persuasively argues in reply that Recon does not dispute it used the Combat Application Tourniquet Mark both on its products and on an insert distributed with all Recon tourniquets for some time. (ECF No. 134 at 15 (referring in pertinent part to ECF No. 115-17 (Exhibit Q)).) The Court agrees with CRI there is no genuine issue of material fact that Recon infringes CRI's Combat Application Tourniquet Mark.

"To prove trademark infringement, a trademark holder must show that the defendant's use of its trademark is likely to cause confusion, or to cause mistake, or to deceive." *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) (citation and internal quotation marks omitted). "The touchstone for trademark infringement is likelihood of confusion, which asks whether a 'reasonably prudent' marketplace consumer is 'likely to be confused as to the origin of the good or service bearing one of the marks.'" *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 431 (9th Cir. 2017) (quoting *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012)). There are two types of confusion: forward and reverse. "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (citation omitted). "Reverse confusion, on the other hand, 'occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one.'" *Id.* (citation omitted).

To determine whether a likelihood of forward or reverse confusion exists, courts apply the eight *Sleekcraft* factors: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the

purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *See id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). But the *Sleekcraft* factors are not the only factors a court may consider in a likelihood of confusion analysis. Rather, they constitute "guideposts ... and are adaptable to specific cases." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 874 (9th Cir. 2014). Further, "[b]ecause of the difficulty in garnering evidence of actual confusion, the failure to prove instances of actual confusion is not dispositive.'" *JL Beverage*, 828 F.3d at 1111 (citing *Sleekcraft*, 599 F.2d at 353) (internal quotations omitted).

The Court will address the *Sleekcraft* factors in turn. To start, it is undisputed that CRI owns the valid Combat Application Tourniquet Mark. (ECF No. 115-1.)

As to the first factor, "Combat Application Tourniquet" is not a very strong mark, one best characterized as descriptive—on the weaker end of the continuum of marks. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002) (explaining the continuum and that descriptive marks are on the weaker end). "Descriptive marks define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." *Id.* at 1141-42. The Combat Application Tourniquet Mark is therefore descriptive because it explains the relevant characteristics of the product—a tourniquet sufficiently simple to use that it can be applied in a combat scenario. It requires no imagination to understand the intended use of the "Combat Application Tourniquet" from the mark. *See id.* at 1142 (finding mark descriptive because "an entirely unimaginative, literal-minded person would understand the significance of the reference."). Thus, the Court is unpersuaded by CRI's statement that its mark is strong. (ECF No. 114 at 22 (offering no argument to support the statement its mark is strong).) Further, even if the Combat Application Tourniquet Mark is incontestable—as CRI has proffered no evidence to support its statement that the mark is incontestable—the incontestable status

of a trademark does not require a finding that the mark is strong. *See Entrepreneur Media, Inc.*, 297 F.3d at 1143. Thus, this factor weighs against finding trademark infringement.

However, the remaining *Sleekcraft* factors either weigh in favor of finding infringement, or are neutral. As to the second factor, there can be no real dispute that the goods are virtually identical. Both are tourniquets intended for one-hand operation. And while they were submitted to the Court in connection with the patent infringement portion of CRI's motion, the Court has examined the tourniquets and finds they are very similar; the only obvious difference is that Recon's tourniquets have a finger hole on the strap. (*Compare* ECF Nos. 115-6, 115-8 *with* ECF Nos. 115-7, 115-9.) The second *Sleekcraft* factor therefore weighs in favor of finding trademark infringement.

The third *Sleekcraft* factor—the similarity of the marks—also weighs in favor of finding trademark infringement. The marks are identical. The Combat Application Tourniquet Mark consists of the phrase "Combat Application Tourniquet." (ECF No. 115-1.) CRI has proffered unrebutted evidence that Recon uses, or has used, the phrase "Combat Application Tourniquet" both on its website and on an insert that Recon distributed with its tourniquets for some time. (ECF Nos. 115-10 at 18, 115-16, 115-17.) In its response to CRI's motion, Recon rightly attacks CRI's attempt to proffer evidence of actual confusion as to the CAT Mark in support of its claim of trademark infringement of the Combat Application Tourniquet Mark. (ECF No. 132 at 18-20.) Recon even goes so far as to argue that the only evidence CRI submitted in support of its trademark infringement claim was its Exhibit S, and then argues as to why Exhibit S does not show confusion. (*Id.* at 19.) However, as CRI at least partially argues in reply (ECF No. 134 at 15 (pointing out only Exhibit Q)), Recon's argument ignores CRI's exhibits P and Q, which show Recon used the phrase Combat Application Tourniquet to sell its products. (ECF Nos. 115-16, 115-17.) Recon's failure to address these exhibits leaves them unrebutted. Thus, the Court finds there is no material factual dispute that Recon used the phrase

"Combat Application Tourniquet" in selling its tourniquets, which, again, is identical to CRI's allegedly infringed mark.

The fourth factor—evidence of actual confusion—tips only slightly in favor of finding infringement, because much of the evidence CRI proffered to show actual confusion tends to show actual confusion as to the CAT Mark, not the Combat Application Tourniquet Mark. (ECF Nos. 117-3, 117-5, 117-6, 117-7, 117-8 (tending to show actual confusion as to the CAT Mark).) However, CRI did proffer some evidence of actual forward confusion, where a third party looking to distribute Recon's products reached out to Recon through Recon's website contact form, beginning his email with, "I am currently looking to add to my product line and carry the Combat Application Tourniquets." (ECF No. 117-4.) This email tends to show that its sender believed Recon sold Combat Application Tourniquets, using CRI's trademarked phrase at issue in this litigation. Further, Recon's 30(b)(6) witness Derek Parsons admitted at his deposition this customer "might be" confused. (ECF No. 115-10 at 33-34.) Thus, this email tends to show actual confusion. While CRI is not required to show actual confusion to prevail on the trademark infringement portion of its motion, *see JL Beverage*, 828 F.3d at 111, this fourth factor tips slightly in favor of finding trademark infringement because the email correspondence included as CRI's Exhibit S tends to show actual confusion. (ECF No. 117-4.)

The fifth factor also weighs in favor of finding trademark infringement because it is undisputed that both parties sell their products on Amazon's online marketplace. (ECF Nos. 114 at 21, 115-10 at 6, 9-10, 115-16 at 3.) Amazon's marketplace constitutes a marketing channel. *See, e.g.*, *Suja, Life, LLC v. Pines Int'l, Inc.*, Case No. 16CV985-GPC(WVG), 2016 WL 6157950, at *11 (S.D. Cal. Oct. 24, 2016) (treating Amazon as a marketing channel).

The remaining *Sleekcraft* factors are neutral because CRI—the moving party—has not proffered evidence as to these factors. To start, CRI has not proffered evidence of the degree of care likely to be exercised by the purchaser. The Court expects a purchaser of

these goods would exercise care because they are potentially life-saving emergency medical devices, but cannot say definitively because CRI did not proffer any evidence going to this point. (ECF No. 114 at 22.) Similarly, while CRI states that "Recon's intent is to copy CRI in every way, including product design and name," and that seems plausible based on the similarity of both the products and their name, CRI did not proffer any evidence as to how or why Recon chose to use CRI's trademarked phrase "Combat Application Tourniquets," to sell its products.[6] (*Id.*) Finally, because even CRI states that the eighth factor—the likelihood of expansion of the product lines—is neutral (ECF No. 114 at 22), and the Court agrees, that factor is neutral.

Weighing all of these factors together, the Court finds there is a likelihood of confusion between Recon's products described by Recon as "Combat Application Tourniquet[s]," and CRI's products bearing the Combat Application Tourniquet Mark. While the Court acknowledges that, "[b]ecause of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena," *Entrepreneur Media, Inc.*, 279 F.3d at 1140, a court may grant summary judgment of trademark infringement where there is no genuine dispute of material fact. *See, e.g.*, *Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 842 (C.D. Cal. 2018) (granting plaintiff summary judgment of likelihood of confusion). Here, the second, third, and fifth— and to some extent the fourth—*Sleekcraft* factors support the Court's conclusion. Overall, the evidence that CRI proffered to the Court, which Recon largely failed to rebut, establishes that Recon infringes CRI's Combat Application Tourniquet Mark. The Court will therefore grant the trademark infringement portion of CRI's summary judgment motion.

///

---

[6]That said, it is reasonable to infer that Recon chose to use an identical trademarked phrase to confuse consumers because its chosen phrase is identical to the Combat Application Tourniquet Mark, the products are nearly identical, and Recon's 30(b)(6) witness admitted to seeing CRI's tourniquets on Amazon's online marketplace. (ECF Nos. 115-6, 115-7, 115-8, 115-9, 115-10 at 9-10, 115-16, 115-17.) *See also Stone Creek*, 875 F.3d at 434 ("[C]hoosing a designation with knowledge that it is another's trademark permits a presumption of intent to deceive.").

## C. Unfair Competition

The Court further finds, as explained below, that CRI is entitled to summary judgment on its federal unfair competition claim under 15 U.S.C. § 1125(a). The relevant inquiry is the same inquiry the Court undertook above as to Plaintiff's trademark infringement claim: "the test is identical—is there a 'likelihood of confusion?'" *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017) (citation omitted). And like trademark infringement, the Court may grant summary judgment of federal unfair competition where appropriate. *See Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 860-61 (9th Cir. 1996), *as amended* (Aug. 6, 1996).

CRI argues in pertinent part that it is also entitled to summary judgment on this claim because Recon uses the Combat Application Tourniquet Mark, told one of its customers in an email that Recon's tourniquets are "rebranded" CAT tourniquets with "upgrades," and offers its products in the same three colors that CRI does. (ECF No. 114 at 23.) Recon responds that CRI cannot prevail on a trade dress infringement claim because its products are functional and not distinctive. (ECF No. 132 at 21-22.) CRI counters that Recon's trade dress argument is misplaced, and that Recon has failed to dispute any of the evidence CRI proffered in support of its unfair competition claim. (ECF No. 134 at 17.)

The Court agrees with CRI. The Court has already found a likelihood of confusion in granting summary judgment on CRI's trademark infringement claim. Because the likelihood of confusion inquiry is the same for CRI's unfair competition claim, the evidence and findings discussed *supra* apply with equal force as to this claim. Further, the Court notes that Recon has failed to proffer any evidence or explanation as to why it offers its tourniquets in the same colors as CRI, which tends to weigh in favor of the Court finding the identical colors are an additional factor evidencing Recon's intent to trick consumers into believing Recon's products are CRI's products. In addition, CRI's proffered evidence as to actual confusion regarding the CAT Mark, while technically unable to help CRI on its

trademark infringement claim, does tend to show customers are confused about the difference between Recon's products and CRI's products. (ECF Nos. 117-3, 117-5, 117-6, 117-7, 117-8.) In fact, in one of those examples, Recon appears to encourage one of its customer's confusion, calling Recon's products "rebranded [CAT] but with upgraded buckles."[7] (ECF No. 117-3.) Regardless, Recon fails to rebut the evidence underlying the Court's finding of trademark infringement, or CRI's evidence that Recon offers its products in the same colors. The Court will therefore grant CRI summary judgment on its federal unfair competition claim.

### D. SCUPTA

However, CRI essentially concedes it is not entitled to summary judgment on its SCUPTA claim. (ECF No. 134 at 17-18.) CRI writes, "Recon is correct that a necessary element of CRI's claim is a demonstration of actual, ascertainable damages. CRI moved for partial summary judgment on liability only, without providing evidence of damages in its initial motion. CRI acknowledges that demonstration of damages is an element of the claim." (*Id.*) CRI then proceeds to request an order under Fed. R. Civ. P. 56(g) stating that CRI has established all elements of its SCUPTA claim except for damages. (*Id.* at 18.) The Court declines to issue such an order. Because CRI has failed to proffer evidence of actual, ascertainable damages to support its SCUPTA claim, it has failed to carry its summary judgment burden as to that claim. *See Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998) (stating that an element of the plaintiff's SCUPTA claim is "that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice[.]") (citations omitted).

///

///

_____

[7]The Recon representative who participated in this email thread is Derek Parsons, who was also designated as Recon's 30(b)(6) witness. (ECF No. 115-10 at 5.) When asked about this email thread during his deposition, Mr. Parsons conceded that the customer was confused, and explained in response to questioning about his use of the phrase "rebranded," "You know, I probably shouldn't have used rebranded." (*Id.* at 31-32.)

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant Recon's motion for summary judgment (ECF Nos. 111, 112) as to invalidity is denied.

It is further ordered that Defendant Recon's motion for summary judgment as to noninfringement (ECF No. 113) is granted in part, and denied in part. It is granted to the extent the Court finds Recon does not indirectly infringe claims 1-11 and 15-17 of the '067 Patent and claims 1-5 and 8-11 of the '253 patent. It is denied in all other respects, specifically including as to claim 12 of the '253 patent.

It is further ordered that Plaintiff' CRI's motion for summary judgment (ECF No. 114) is granted in part, and denied in part. It is granted as to CRI's trademark infringement and federal unfair competition claims. It is denied as to CRI's patent infringement and SCUTPA claims.

DATED THIS 5th day of July 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE