V.R. Bohman, Esq.
Nevada Bar No. 13075
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
Telephone:  702.784.5200
Facsimile:  702.784.5252
Email: vbohman@swlaw.com

Sid Leach, Esq. *(Admitted Pro Hac Vice)*
SNELL & WILMER L.L.P.
2400 E. Van Buren – One Arizona Center
Phoenix, Arizona 85004
Telephone:  602.382.6000
Facsimile:  602.382.0430
Email: sleach@swlaw.com

William Y. Klett, III, Esq. *(Admitted Pro Hac Vice)*
BURR & FORMAN LLP
1221 Main Street, Suite 1800
Columbia, South Carolina  29201
Telephone:  803.753.3221
Facsimile:  803.933.1470
Email: wklett@burr.com

*Attorneys for Plaintiff Composite Resources, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

COMPOSITE RESOURCES, INC.,

          Plaintiff,

vs.

RECON MEDICAL, LLC,

          Defendant.

Case No. 2:17-cv-01755-MMD-VCF

**PLAINTIFF COMPOSITE RESOURCES, INC.'S POST-TRIAL BRIEF**

       Plaintiff Composite Resources, Inc., by and through its undersigned attorneys, respectfully submits this post-trial brief in support of a permanent injunction, pursuant to this Court's Minute Order setting a post-trial briefing schedule.  ECF No. 246.  Plaintiff concurrently submits its proposed order for the Court's convenience, attached as Exhibit 1.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

## I.   INJUNCTIVE RELIEF

Plaintiff Composite Resources, Inc. ("CRI"), is the exclusive manufacturer of the patented tourniquets, known as the Combat Application Tourniquet ("CAT") device.  In 2017, Plaintiff CRI commenced this action against Defendant Recon Medical, LLC ("Recon"), seeking relief from Defendant Recon's patent infringement.[1]  The acts of infringement by Defendant Recon continued for the entire four-year duration of this litigation.  *See generally SATA GmbH & Co. v. USA Italco International Ltd*., No. 3:18-cv-00351-MMD-WGC, 2019 WL 4601513, at *6 (D. Nev. Sept. 20, 2019) ("[D]espite failing to respond to the Complaint, Defendants continue to advertise the Counterfeit Paint Spray Guns, export goods and make sales within the United States.").

At trial, Defendant Recon essentially conceded infringement by its GEN 1, GEN 2, and GEN 3 tourniquets.  At trial, Defendant Recon abandoned every single invalidity contention that Recon had previously disclosed in its invalidity contentions.  Yet, Defendant Recon continued to import infringing tourniquets into the United States, and to sell them online.  On December 2, 2021, the jury returned a verdict finding that every single one of the four tourniquets that Defendant Recon sold over the past five years infringed Plaintiff CRI's patent rights.[2]  ECF No. 253.

Unfortunately, during the time permitted by the Court for post-trial briefing, Defendant Recon has attempted to dump as much of the infringing product on the market as possible before this Court enters an injunction.  On Amazon.com, Defendant Recon has slashed the prices of its infringing tourniquets by 60%.  Exhibit 2 is a true and correct copy of a screenshot of Recon's

---

[1] This civil action also included other claims which were the subject of summary judgment proceedings. This Court previously granted summary judgment in favor of Plaintiff Composite Resources on CRI's trademark infringement and unfair competition claims.  ECF No. 152, Order, at 16-23.

[2] Plaintiff CRI established that it is the owner of all three patents at issue in this case. ECF No. 171, Pretrial Order, at 8-9, ¶¶ 3-5.  The Court granted Plaintiff's Rule 50 motion, "finding the three patents at issue to be valid." ECF. No. 245. Thus, Plaintiff established that Defendant Recon infringed valid patents owned by Plaintiff.

1

Amazon.com marketplace, taken on December 9, 2021, showing one of Recon's GEN 4 tourniquets with its price reduced from $39.99 to $15.97.[3]

Shortly before trial, Defendant Recon filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Nevada.  The financial information provided by Defendant Recon in the bankruptcy proceedings shows that Plaintiff CRI effectively has no remedy for damages based upon Recon's patent infringement.  Trial testimony of Derek Thompson (Dec. 2, 2021); ECF No. 217-1, Exhibit 1, Declaration of Derek G. Thompson, at ¶7; *see generally* P13[4].

A court is authorized by statute to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283. *See also Voice Sys. & Servs., Inc. v. VMX, Inc*., No. 91-C-88-B, 1992 WL 510121, at *11 (N.D. Okla. Nov. 5, 1992) (recognizing that injunctive relief in patent cases is expressly authorized by statute and by case law.).

 In accordance with the principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test for such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019).

 Protection of the right conveyed by a patent -- to exclude others from making, using, offering for sale, or selling the invention -- may require the remedy of a permanent injunction for its vindication.  *See* 35 U.S.C. § 154(a)(1); *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861-63 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

---

[3] Exhibit 2, Amazon.com, Recon Medical Tourniquet (Black) - Gen 4B (visited December 9, 2021) < https://www.amazon.com/Recon-Medical-BLK-1PAK-FBA-Tourniquet-Pre-Hospital/dp/B01ETMVQOI/ref=mp_s_a_1_3?keywords=tourniquets&pd_rd_r=33f0c24f-e794-4d85-8bff-41a46b14d978&pd_rd_w=pc3WI&pd_rd_wg=rnDc1&pf_rd_p=ce028c81-ed8c-425a-8404-93bf425aa8ce&pf_rd_r=5PKEFH5NZA1WM1BTTW71&qid=1639105708&sr=8-3>

[4] Plaintiff's exhibit 13 (introduced into evidence at trial) is cited herein as "P13."

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

### 1.   Irreparable Injury

In view of Defendant Recon's bankruptcy filing, if this Court denies injunctive relief, then the harm caused to Plaintiff CRI by Defendant Recon's infringement will be irreparable, because CRI will be left with no remedy at all for the injury caused by Defendant Recon. *Boyce's Ex'rs v. Grundy*, 28 U.S. (3 Pet.) 210, 214 (1830) ("It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.").

This case involved three patents, referred to as the '067 Patent, the '253 Patent, and the '807 Patent. ECF No. 171, Pretrial Order, at 8-9.  Plaintiff CRI's commercial products are covered by the '067 Patent and the '253 Patent.  ECF No. 171, Pretrial Order, at 9, ¶13 ("The following facts are admitted by the parties and require no proof.").  Plaintiff CRI's method of manufacturing its commercial products is covered by the '807 Patent.  *Id.*

During trial, witness testimony from Derek Thompson and Graham Rogers supported a finding that Plaintiff CRI and Defendant Recon are direct competitors.[5]  This Court previously found that Defendant Recon competes directly with Plaintiff CRI on Amazon's online marketplace.  ECF No. 152, Order, at 20 ("[I]t is undisputed that both parties sell their products on Amazon's online marketplace."); *see also* ECF No. 152, Order, at 21 n.6 ("Recon's 30(b)(6) witness admitted to seeing CRI's tourniquets on Amazon's online marketplace."). Indeed, not only does Defendant Recon compete with Plaintiff CRI, but this Court has found that Defendant Recon has engaged in *unfair competition* with Plaintiff.  ECF No. 171, Pretrial Order, at 10, ¶25.

If an injunction is not granted, Plaintiff CRI will be irreparably harmed by being forced to compete in the marketplace against its own patented invention. *Douglas Dynamics, LLC v.*

---

[5] The fact that other entities may also participate in the market does not render the competition between Plaintiff and Defendant any less direct.  *Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp.3d 17, 89 (D. Mass. 2015) ("That other entities may participate in the mobile application security market does not render their competition any less direct."); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011) ("The court's first legal error lies in its conclusion that the presence of additional competitors, without more, cuts against a finding of irreparable harm. It is well-established that the 'fact that other infringers may be in the marketplace does not negate irreparable harm'."), *quoting from Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005).

*Buyers Prods. Co*., 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."); *Presidio Components, Inc. v. American Tech. Ceramics Corp*., 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("Direct competition in the same market ... suggest[s] strongly the potential for irreparable harm without enforcement of the right to exclude."); *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F.Supp.2d 592, 613 (D. Del. 2007) (Where parties "are head-to-head competitors," plaintiff has the statutory right "not to assist its rival with the use of proprietary technology.").

During trial, Defendant Recon's CEO Derek Parsons testified that customers purchased Recon's infringing products because of the "patented" features of the tourniquets.[6] Trial testimony of Derek Parsons (Dec. 2, 2021). Based on the jury verdict finding that all of the Recon tourniquets incorporate Plaintiff CRI's patented technology, the "patented" features that drive customer demand for the Recon tourniquets are actually ***Plaintiff's*** patented features.[7] It is undisputed that the patented invention filled a long felt need. ECF No. 171, Pretrial Order, at 11, ¶42 ("The present tourniquet invention met a long felt need."). Other witnesses testified during trial that the patented features of Plaintiff CRI's tourniquets -- including the ability to apply the tourniquet using only one hand and the uniform effective compressive force generated on a body

---

[6] This Court previously found that there was unrebutted evidence indicating that customers were confused about the difference between Recon's products and CRI' products. ECF No. 152, Order, at 22-23 ("CRI's proffered evidence as to actual confusion regarding the CAT Mark, while technically unable to help CRI on its trademark infringement claim, does tend to show customers are confused about the difference between Recon's products and CRI's products."). The Court found that Recon appears to encourage one of its customer's confusion. ECF No. 152, Order, at 23 ("In fact, in one of those examples, Recon appears to encourage one of its customer's confusion, calling Recon's products 'rebranded [CAT] but with upgraded buckles'."). As far as consumer demand is concerned, the Court found that the products are "very similar." ECF No. 152, Order, at 19 ("[T]here can be no real dispute that the goods are virtually identical. ... And while they were submitted to the Court in connection with the patent infringement portion of CRI's motion, the Court has examined the tourniquets and finds they are very similar; the only obvious difference is that Recon's tourniquets have a finger hole on the strap.").

[7] The evidence of infringement was so overwhelming, the Court made a determination that no reasonable juror could find that the GEN 1, GEN 2, and GEN 3 tourniquets did ***not*** infringe the patents. ECF No. 245 ("The Court grants Plaintiff's motion as to ... infringement as to Defendant's Gen 1, Gen 2 and Gen 3 products.").

part when the tourniquet is tightened down -- are significant features of the patented tourniquets sold by Plaintiff CRI.[8] *Cf. TEK Global, S.R.L. v. Sealant Systems International, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019) ("Driving demand, however, does not require a patented feature to be the only basis of consumer demand. It was enough for TEK to show that a significant reason consumers bought its device was the presence of the patented features.") (citation omitted). Moreover, previously in this case, the Court noted evidence that weighed in favor of a finding of "Recon's intent to trick consumers into believing Recon's products are CRI's products."  ECF No. 152, Order, at 22 ("Further, the Court notes that Recon has failed to proffer any evidence or explanation as to why it offers its tourniquets in the same colors as CRI, which tends to weigh in favor of the Court finding the identical colors are an additional factor evidencing Recon's intent to trick consumers into believing Recon's products are CRI's products.").

Plaintiff CRI's customer base is diminished each time that Defendant Recon makes a sale. Because each customer is a potential source of referrals for new customers, each Recon sale has the potential to impede the expansion of Plaintiff CRI's customer base. *Voice Sys. & Servs., Inc.*, 1992 WL 510121, at *9 ("VMX's potential customer base is diminished each time VSSI makes a sale, and since each VMX customer is a potential source of referrals for new customers, each VSSI sale has the potential to impede the expansion of VMX's customer base."). The loss of customers results in harm that is difficult to quantify, and is a form of irreparable harm. *TEK Global, S.R.L. v. Sealant Systems International, Inc.*, 920 F.3d 777, 793 (Fed. Cir. 2019) ("Head-to-head competition and lost market share tend to evidence irreparable harm."); *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017). When sales-based losses are difficult to quantify, that qualifies as irreparable harm that weighs in favor of an injunction. *Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 645, 647 n.2 (Fed. Cir. 2015), *cert. denied*, 136 S.

---

[8] This Court has found that both the infringing Recon tourniquets and the patented CRI tourniquets are intended for one-hand operation.  ECF No. 152, Order, at 19 ("[T]here can be no real dispute that the goods are virtually identical. Both are tourniquets intended for one-hand operation. And while they were submitted to the Court in connection with the patent infringement portion of CRI's motion, the Court has examined the tourniquets and finds they are very similar; the only obvious difference is that Recon's tourniquets have a finger hole on the strap.").

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Ct. 2522 (2016); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011) (concluding that the district court erred in not finding irreparable harm when the parties were direct competitors and patentee showed lost market share and access to potential customers).

During trial, testimony from Derek Thompson supported a finding that, if an injunction is not granted, Plaintiff CRI is likely to suffer irreparable harm to its reputation in the marketplace. During trial, Defendant Recon's CEO Derek Parsons admitted that the Recon tourniquets had a delamination issue. Trial testimony of Derek Parsons (Dec. 1, 2021). This Court has already found that Defendant Recon confused and deceived customers with Recon's acts of trademark infringement and unfair competition. ECF No. 152 at 16–23. Defendant Recon's CEO Derek Parsons admitted that Recon had no control over the China manufacturer that made the infringing tourniquets. Trial testimony of Derek Parsons (Dec. 1, 2021). Thus, Defendant Recon does not control the quality of the infringing products manufactured in China. Indeed, Defendant Recon's CEO Derek Parsons admitted that he had never even visited the China manufacturing facilities. *Id*.

During trial, witness testimony from Derek Thompson supported a finding that Plaintiff CRI suffers from price competition from competitors like Defendant Recon who do not have any significant investment in intellectual property, or quality control, or manufacturing facilities. Derek Thompson further testified that Plaintiff's patented tourniquets are regarded as the industry leaders, and whenever a counterfeit tourniquet fails, users of the tourniquet initially assume that the failed tourniquet was one of Plaintiff's patented products. Trial testimony of Derek Thompson (Dec. 2, 2021). "Irreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales and erosion in reputation and brand distinction." *Douglas Dynamics, LLC v. Buyers Prods. Co*., 717 F.3d 1336, 1344 (Fed. Cir. 2013).

Here, Plaintiff CRI has never licensed the patents at issue, and intentionally chose not to do so in order to maintain market exclusivity. *J&M Industries, Inc. v. Raven Industries, Inc*., No. 16-2723-JWB, 2021 WL 5769360, at *10 (D. Kan. Dec. 6, 2021) ("Evidence also shows that J&M has sought to retain the goodwill that it has accrued from sales of its invention. It has never granted a license to an unaffiliated company and represents that it has no intention of licensing

Snell & Wilmer

L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

the '550 Patent in the future."). CRI's reputation as an innovator will likely be damaged if customers find the same "innovations" appearing in Defendant Recon's tourniquets. Plaintiff CRI's business reputation would be damaged if its distributors believed it did not enforce its intellectual property rights. In a case involving similar facts, the Federal Circuit found irreparable harm, stating:

> Even absent consumer confusion, however, there can still be harm to a company's reputation, particularly its perception in the marketplace by customers, dealers, and distributors. As just one example, Douglas's reputation as an innovator will certainly be damaged if customers found the same "innovations" appearing in competitors' snowplows, particularly products considered less prestigious and innovative. Furthermore, as Buyers's expert agreed, Douglas's reputation would be damaged if its dealers and distributors believed it did not enforce its intellectual property rights. Lastly, the evidence shows that Douglas had never licensed the infringed patents, and intentionally chose not to, so that it could maintain market exclusivity. Exclusivity is closely related to the fundamental nature of patents as property rights. It is an intangible asset that is part of a company's reputation, and here, Douglas's exclusive right to make, use, and sell the patented inventions is under attack by Buyers's infringement.

*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344-45 (Fed. Cir. 2013).

Continued acts of infringement by Defendant Recon may encourage others to infringe Plaintiff CRI's patents, and this further supports a finding of irreparable harm. *Voice Systems & Services, Inc. v. VMX, Inc.*, No. 91-C-88-B, 1992 WL 510121, at *9 (N.D. Okla. Nov. 5, 1992) ("Continued acts of infringement by VSSI may encourage others to infringe VMX's patents.").

During trial, there was testimony that it is difficult to identify the manufacturer of a tourniquet by looking at it. Tourniquets had to be cut open at trial in order to look for identifying markings inside the tourniquet which were only visible when the tourniquet was cut open. Other testimony was offered at trial concerning defective tourniquets, and witnesses testified they did not know who made the defective tourniquets in question, which would be the case if the manufacturer chose not to place any identifying markings on the tourniquet. The difficulty in identifying the manufacturer of a tourniquet by looking at it will likely make it difficult to police infringement of the patents at issue. *J&M Industries, Inc. v. Raven Industries, Inc.*, No. 16-2723-JWB, 2021 WL 5769360, at *10 (D. Kan. Dec. 6, 2021) ("In addition to such evidence of lost opportunities and price erosion, J&M has cited evidence that it is difficult to identify the manufacturer of an internal strapping system by looking at it, which would likely make it difficult

for J&M to police infringement of the '550 Patent.").  This circumstance also weighs in favor of finding irreparable injury.

### 2.  Inadequate Remedy at Law

Plaintiff Composite Resources clearly has no adequate remedy at law for Defendant Recon's patent infringement. Recon cannot respond in monetary damages, as is evident from Defendant's bankruptcy filing and the financial information disclosed by Recon in the bankruptcy proceedings. *Voice Systems & Services, Inc. v. VMX, Inc*., No. 91-C-88-B, 1992 WL 510121, at *9 (N.D. Okla. Nov. 5, 1992) ("In its Chapter 11 proceeding, VSSI has admitted that its liabilities, exclusive of any that may be created as a result of VMX's counterclaims herein, are greater than its assets. Therefore, VSSI will be unable to compensate VMX for the damages that VSSI has caused and is continuing to cause by VSSI's infringement of VMX's patents. Therefore, VMX cannot be adequately compensated in damages and does not have an adequate remedy at law."). In a sworn declaration filed with the bankruptcy court, Defendant Recon's CEO Derek Parsons testified that Recon "lacks the resources to be able to pay counsel to continue the fight and go through what will be a very expensive and time-consuming trial, and potential post-trial practice and potential appeals and associated bonds." P13, at 046, Declaration of Derek Parsons, at ¶16.  If Defendant Recon does not even have the resources to pay its attorneys, it surely does not have the financial resources to respond in damages, and Plaintiff CRI correctly concluded that Plaintiff does not have an adequate remedy at law.  Defendant Recon says that its financial condition is so bad that it had "no other choice but to file bankruptcy in an effort to save its business...[.]"  P13, at 047, Declaration of Derek Parsons, at ¶19.

Defendant Recon Medical has an SBA "Economic Injury Disaster Loan" in the amount of $150,000.  P13, at 009; P13, at 042; P13, at 071-072.  This is a secured loan, and the U.S. Small Business Administrator is a secured creditor.  P13, at 042, Declaration of Derek Parsons, at ¶5. This secured creditor has a security interest in Recon's inventory, equipment, accounts (including credit card receivables), deposit accounts -- in other words, substantially all of the Debtor's personal property. P13, at 042-043, Declaration of Derek Parsons, at ¶5; P13, at 060.

1    The only fixed assets that Defendant Recon has listed on the books is "Equipment," which

2    may have had an initial value of $9000, but which is fully depreciated to $0, and according to

3    Recon's balance sheet, currently is worthless.  P13, at 030.  Defendant Recon's liabilities total

4    $316,892.38.  P13, at 031.  Defendant Recon's assets total $152,183.68.  P13, at 030.  Recon's

5    liabilities exceed its assets.  And as far as Recon's assets are concerned, to the extent that Recon

6    has any assets - a secured creditor has a security interest in those assets, including the above-

7    mentioned "Equipment."

8    In the case of *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142 (Fed. Cir. 2011), the

9    Federal Circuit found that "the district court committed a clear error in judgment when it

10   concluded that Bosch failed to demonstrate irreparable harm." 659 F.2d at 1152. In that case, the

11   plaintiff Bosch introduced unrebutted evidence of the defendant's inability to satisfy a judgment.

12   *Id.* ("Bosch also introduced unrebutted evidence of . . . Pylon's inability to satisfy a judgment.").

13   The Federal Circuit rejected the defendant's argument that the evidence of inability to pay was

14   "unsupported and speculative." 659 F.2d at 1154 ("Pylon further argues that Bosch's evidence of

15   Pylon's inability to pay is unsupported and speculative. We disagree.").

16   The evidence offered by the plaintiff "raised questions" about the defendant's ability to

17   satisfy a judgment. *Robert Bosch*, 659 F.3d at 1154 ("As additional evidence of irreparable harm,

18   Bosch introduced evidence showing that the financial condition of both Pylon and its corporate

19   parent raised questions about Pylon's ability to satisfy a judgment.").  In that case, the defendant

20   did not dispute the accuracy of the evidence introduced by the plaintiff, and more importantly, the

21   defendant did not submit evidence demonstrating its ability to pay a damages award. 659 F.3d at

22   1154-55 ("In response, Pylon did not dispute the accuracy of these submissions, nor did it submit

23   evidence demonstrating its ability to pay a damages award, either of past or future damages.").

24   Given that discovery concerning the defendant's financial condition was not available at that time

25   to the plaintiff, the Federal Circuit held that the defendant's failure to submit rebuttal evidence

26   concerning its ability to satisfy an award of monetary damages resulted in this factor favoring a

27   finding of irreparable harm.  The court of appeals said:

28

While the burden of proving irreparable harm was of course Bosch's, Pylon's failure to submit rebuttal evidence regarding its ability to satisfy an award of money damages is troublesome given the procedural history of this case. Because the district court granted Pylon's motion to bifurcate damages, Bosch had no opportunity to obtain discovery relating to Pylon's financial condition, or that of its corporate parent before the court considered its request for injunctive relief. Consequently, ***facts relevant to Pylon's ability to satisfy a judgment were uniquely within its control***. While Bosch's evidence of Pylon's inability to pay is not overwhelming—gleaned as it had to be from public records, in light of Pylon's failure to introduce any rebuttal evidence or to even argue below or to this court that Bosch's characterization of its financial status is inaccurate, and the unique procedural history of this case, we conclude that this factor favors a finding of irreparable harm.

*Robert Bosch*, 659 F.3d at 1155 (emphasis added).

The facts of this case are similar. Defendant Recon filed for bankruptcy after the close of discovery. The information gleaned from public records indicates that the liabilities of Defendant Recon exceed its assets.[9] Virtually everything that Recon owns of value is subject to a security interest in favor of a secured creditor.[10] The only plan that Defendant Recon has for generating cash flow in the future is to continue to irreparably harm Plaintiff by selling infringing tourniquets.[11] This evidence is sufficient to establish that Plaintiff CRI does not have an adequate

---

[9] Defendant Recon's liabilities total $316,892.38. P13, at 031. Defendant Recon's assets total $152,183.68. P13, at 030.

[10] As far as Recon's assets are concerned, a secured creditor has a security interest in those assets. P13, at 042, Declaration of Derek Parsons, at ¶5. This secured creditor has a security interest in Recon's inventory, equipment, accounts (including credit card receivables), deposit accounts -- in other words, substantially all of the Debtor's personal property. P13, at 042-043, Declaration of Derek Parsons, at ¶5; P13, at 060.

[11] *In re Recon Medical, LLC*, Ch. 11 Case No. 21-14382-nmc, ECF No. 68, Plan of Reorganization for Small Business Under Chapter 11, at 6 ("The Plan will be funded through cash on hand and cash flow generated from continued operations. From and after the Effective Date of this Plan, the Debtor will not sell any Gen 2 or Gen 3 tourniquets, but rather only its newer Gen 4 tourniquets . . .".) (D. Nev. plan of reorganization filed Oct. 7, 2021). Pursuant to Rule 201(c)((2), Fed.R.Evid., the Court is requested to take judicial notice of the reorganization plan filed by Debtor Recon Medical, at ECF No. 68, during the bankruptcy proceedings in Bankruptcy Case No. 21-14382-nmc, pending in the Bankruptcy Court for the District of Nevada. *Genentech, Inc. v. United States International Trade Commission*, 122 F.3d 1409, 1417 (Fed. Cir. 1997) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records."), (*quoting Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (A court "may take notice of proceedings in other courts ... if those proceedings have a direct relation to matters at issue.") (citations and internal quotation marks omitted).

remedy at law, and has suffered irreparable harm. *See, e.g., O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 204-cv-32, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) ("According to O2 Micro, it has not sought monetary damages for past infringement because monetary damages would not adequately compensate it for the injuries caused by the defendants' infringement. O2 Micro also points out that all three defendants are foreign corporations and that there is little assurance that it could collect monetary damages. The Court agrees with O2 Micro."), *vacated and remanded on other grounds*, 521 F.3d 1351 (Fed. Cir. 2008); *Canon, Inc. v. GCC Int'l Ltd.*, 263 Fed. Appx. 57, 62 (Fed. Cir. 2008) ("[T]o the extent that money damages against Defendants were awarded, there appears to be a reasonable basis for the district court's finding that there would be little probability that Canon could effect the collection of a money judgment."), *vacated and revised opinion*, 263 Fed. Appx. 865 (Fed. Cir. 2008) (unreported).

In the *Robert Bosch* case, the Federal Circuit reversed the district court's failure to issue an injunction. *Robert Bosch*, 659 F.3d at 1155 ("In view of the foregoing evidence, the record contains no basis on which the district court rationally could have concluded that Bosch failed to demonstrate irreparable harm or that a remedy other than injunction is sufficient to address its harm. Consequently, the court committed a clear error of judgment in analyzing this factor."). The similar facts present in this case would appear to weigh in favor of a finding of irreparable harm, and appear to support a conclusion that a permanent injunction is warranted.

In the present case, it would also be difficult to quantify the loss of market share, brand recognition, and customer goodwill that have been lost by Plaintiff CRI. *TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019) ("The inherent difficulty of quantifying 'loss of market share, brand recognition, and customer goodwill' and of estimating monetary damages indicates that 'remedies at law are inadequate.'"), (*quoting i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010)).

Moreover, Plaintiff CRI has not licensed the patents to a non-affiliated company, and has no intention of doing so. This weighs in favor of a finding that monetary damages are inadequate. *J&M Industries, Inc. v. Raven Industries, Inc.*, No. 16-2723-JWB, 2021 WL 5769360, at *10 (D.

Kan. Dec. 6, 2021) ("[T]his conclusion is bolstered by the fact that J&M has never licensed the '550 Patent to a non-affiliated company and maintains that it will not do so.").

### 3.   Balance of Hardships

Plaintiff CRI has further developed the patented inventions conceived by Mark Esposito, and has invested in manufacturing facilities in the United States to produce the patented tourniquets.   In contrast, Defendant Recon Medical has built its business by copying Mark Esposito's patented inventions and by infringing the patents now owned by Plaintiff CRI.   Under these circumstances, the balance of hardships tilts in favor of Plaintiff CRI. *Voice Sys. & Servs., Inc.*, 1992 WL 510121, at *9 ("The balance of hardships tips in favor of VMX, who has developed patentable innovations, and who has invested in substantial research and development, rather than VSSI, who has built its business by infringing VMX's patents.").

If an injunction is issued by this Court, Defendant Recon will not endure any hardship besides being compelled to cease its unlawful conduct.   But without an injunction, Plaintiff CRI will continue to be harmed, because Defendant Recon is likely to continue to infringe on Plaintiff's patents. *SATA GmbH & Co. v. USA Italco International Ltd.*, No. 3:18-cv-00351-MMD-WGC, 2019 WL 4601513, at *6 (D. Nev. Sept. 20, 2019) ("The Court finds no hardships that Defendants would endure besides being compelled to cease their unlawful conduct. But without an injunction, SATA will continue to be harmed because Defendants are likely to continue to infringe on SATA's marks and designs. Thus, this factor strongly favors injunctive relief.").

Plaintiff CRI's investment in domestic manufacturing facilities to further develop and manufacture the patented invention, and Defendant Recon's use of a China manufacturer to copy the patented tourniquets, has given Recon a cost advantage.   As a result of Recon's cost advantage, Plaintiff CRI has had to reduce prices to meet the unfair competition. *Voice Systems & Services, Inc. v. VMX, Inc*, No. 91-C-88-B, 1992 WL 510121, at *9 (N.D. Okla. Nov. 5, 1992) ("As a result of VSSI's cost advantage, VMX has had to reduce prices to meet the unfair competition.").

Mark Esposito published a detailed description of his tourniquet invention in the disclosure provided by his patents. He did so in return for a promise from the federal government that he would be given exclusive rights to his invention for a limited period of time. Mr. Esposito fulfilled his obligations by publishing his invention so that others could try to improve upon it, thereby promoting the progress of science. In balancing the hardships, the Court should take into consideration that Plaintiff's '067 Patent will expire in about 8 years. Plaintiff CRI's patents are entitled to protection. *Id.* at *10 ("VMX published a detailed description of how to make and use its voice mail invention, *see* 35 U.S.C. § 112, in return for a promise from the federal government that VMX would be given the exclusive right to make, use and sell its invention for a limited period of 17 years, *see* 35 U.S.C. § 154. Because VMX published the details of the voice mail invention, VMX is no longer able to protect it as a trade secret. VMX fulfilled its obligations by publishing its invention so that others could try to improve upon it, thereby promoting the progress of science. In balancing the hardships, the Court has taken into consideration that VMX's patent will expire in less than 8 years, and such is entitled to protection.").

### 4.    Public Interest

Public policy favors protection of the rights secured by valid patents. *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir.), *cert. denied*, 464 U.S. 996 (1983); *J&M Industries, Inc. v. Raven Industries, Inc.*, No. 16-2723-JWB, 2021 WL 5769360, at *11 (D. Kan. Dec. 6, 2021) ("The requested injunction in this case furthers a public interest by upholding J&M's patent rights."); *Voice Sys. & Servs., Inc.*, 1992 WL 510121, at *15 ("Public policy favors protection of the rights secured by valid patents...".).

> [T]he public often benefits from healthy competition. However, the public generally does not benefit when that competition comes at the expense of a patentee's investment-backed property right. To conclude otherwise would suggest that this factor weighs against an injunction in every case, when the opposite is generally true. We base this conclusion not only on the Patent Act's statutory right to exclude, which derives from the Constitution, but also on the importance of the patent system in encouraging innovation. Injunctions are vital to this system. As a result, the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions. The encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

*Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) (internal quotation marks, brackets, and citations omitted), *cert. denied*, 136 S. Ct. 2522 (2016).

In this case, public policy would be best served by the entry of an injunction in favor of Plaintiff CRI.  *Voice Sys. & Servs., Inc.*, 1992 WL 510121, at *9 ("Public policy is against an infringer who took a calculated risk that it might infringe a competitor's patents, and tried but failed to establish invalidity of those patents.").

If Plaintiff CRI is not granted relief to stop illegal infringement of its patents, then CRI's patent rights will be greatly diminished. Plaintiff CRI and other patent owners similarly situated will be discouraged from investing in research and development. If courts do not protect valid patent rights, then in the short run other competitors will be able to copy a patentee's present products and drive prices down. But in the long run, the incentive to invest money in developing new products will be lost because others will be able to take a "free ride" on one's invention and investment and copy new products that are developed. That would not be in the public interest. *Voice Sys. & Servs., Inc.*, 1992 WL 510121, at *10 ("If VMX is not granted relief to stop illegal infringement of its patents, then VMX's patent rights will be greatly diminished. VMX and other patent owners similarly situated will be discouraged from investing in research and development. If courts do not protect valid patent rights, then in the short run other competitors will be able to copy a patentee's present products and drive prices down. But in the long run, incentive to invest money in developing new products will be lost because others will be able to take a 'free ride' on one's invention and investment and copy new products that are developed. This would not be in the public interest.").

## II.     INJUNCTION BASED ON PAST ACTS OF INFRINGEMENT

In this case, Defendant Recon erroneously argued that an injunction could only be issued by the Court upon proof that Defendant Recon was still infringing during trial.  The proposed jury instructions submitted by Defendant Recon would have required the jury to find that Recon was currently infringing the patents, and would have limited the jury to only considering the GEN 4 tourniquet.  The Court ruled against Defendant Recon on this issue.

In any event, there is no apparent dispute that the Court should enjoin future sales of the GEN 4 tourniquets.  Unless enjoined from doing so, Defendant Recon intends to continue to sell infringing tourniquets.[12]  Defendant Recon's proposed plan, filed at Docket No. 68 in the bankruptcy proceedings, is to continue to sell the infringing GEN 4 tourniquets in order to generate cash flow going forward.[13]  *In re Recon Medical, LLC*, Ch. 11 Case No. 21-14382-nmc, ECF No. 68, Plan of Reorganization for Small Business Under Chapter 11, at 6 ("The Plan will be funded through cash on hand and cash flow generated from continued operations.  From and after the Effective Date of this Plan, the Debtor will not sell any Gen 2 or Gen 3 tourniquets, but rather only its newer Gen 4 tourniquets . . .".) (D. Nev. plan of reorganization filed Oct. 7, 2021).

Although Defendant Recon's CEO Derek Parsons claimed that Recon had ceased sales of the GEN 1, GEN 2, and GEN 3 tourniquets, he admitted during trial that Defendant Recon could, if it wanted to do so, start selling those products again.  Derek Parsons testified that the GEN 1 and GEN 2 tourniquets were "off-the-shelf" products that were being made by Recon's China manufacturer before Recon started selling those infringing products. There was no evidence that the China manufacturer has stopped making the GEN 1 or GEN 2 tourniquets. Defendant Recon could not guarantee that the China manufacturer has stopped making the GEN 3 tourniquets. Derek Parsons further admitted that Recon had no control over the China manufacturer, and that the China manufacturer could continue making and importing the infringing products into the United States, and selling the infringing products in the United States.

---

[12] At the conclusion of the trial, when the parties were discussing the briefing schedule for post-trial briefs on the injunction, Defendant Recon declined Plaintiff's request to stop selling the GEN 4 tourniquets until the Court could decide the issue of whether to grant injunctive relief.

[13] Pursuant to Rule 201(c)((2), Fed.R.Evid., the Court is requested to take judicial notice of the reorganization plan filed by Debtor Recon Medical, at ECF No. 68, during the bankruptcy proceedings in Bankruptcy Case No. 21-14382-nmc, pending in the Bankruptcy Court for the District of Nevada. *Genentech, Inc. v. United States International Trade Commission*, 122 F.3d 1409, 1417 (Fed. Cir. 1997) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records."), (*quoting Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (A court "may take notice of proceedings in other courts ... if those proceedings have a direct relation to matters at issue.") (citations and internal quotation marks omitted).

Defendant Recon's CEO Derek Parsons claimed that Recon had destroyed more than 19,000 GEN 3 tourniquets that it had in inventory at least as late as July 2021.  Mr. Parsons admitted that the GEN 3 tourniquets he allegedly destroyed were not defective, and could have been sold to customers.  Trial testimony of Derek Parsons (Dec. 2, 2021).  Plaintiff's exhibit P13-1 was a list of inventory that Mr. Parsons caused to be filed with the bankruptcy court, and which he testified at trial that he swore in a declaration filed with the bankruptcy court was a true and correct statement of Recon's inventory.  *Id*.; *see also* P13, at 533.  At trial, Mr. Parsons said he later told the bankruptcy court that his first sworn statement was a "mistake," and the inventory of GEN 3 tourniquets were no longer there on September 17, 2021. Trial testimony of Derek Parsons (Dec. 2, 2021). However, all we have to substantiate the disappearance of more than 19,000 infringing GEN 3 tourniquets is Mr. Parson's testimony. The jury verdict reflects a determination by the jury that the jury did not believe the testimony of Derek Parsons. ECF No. 253, Jury Verdict (Dec. 2, 2021). In a jury trial, the jury is solely responsible for determining the credibility of witnesses, and a court must assume that the jury resolved all conflicts in a manner that supports the verdict.  *United States v. Lawrence*, 649 Fed. Appx. 599, 599 (9th Cir.) (A court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict."), *cert. denied*, 137 S. Ct. 251 (2016), (*quoting Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995)); *United States v. Ortiz*, 362 F.3d 1274, 1279 (9th Cir. 2004) ("Whether the witnesses have testified truthfully, of course, is entirely for the jury to determine"); *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998) ("It is the jurors' responsibility to determine credibility by assessing the witnesses and witness testimony in light of their own experience."), (*quoting United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985)).

In a case tried to a jury which also involves equitable relief, a court is bound by the jury's implicit or explicit factual determinations in deciding the equitable relief.  *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) ("It follows that in a case where legal claims are tried by a jury and equitable claims are tried by a judge, and those claims are based on the same facts, the trial

1  judge must follow the jury's implicit or explicit factual determinations in deciding the equitable

2  claims. The trial court must do so in determining both liability and relief on the equitable

3  claims.") (internal citations, quotation marks, and brackets omitted); *see also Smith v. Diffee*

4  *Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 966 (10th Cir. 2002) (holding that the trial judge

5  impermissibly "disregarded the jury's implicit finding[s]" when the judge denied the wrongfully

6  discharged plaintiff equitable relief of front pay for reasons inconsistent with the jury's findings).

7       In view of the jury's implicit credibility determination against Derek Parsons, the Court

8  should not assume Mr. Parsons' testimony is true where he claimed that he destroyed 19,000

9  GEN 3 tourniquets, especially because that testimony contradicts his previously filed sworn

10  declaration stating that the reported inventory was true and correct. *Los Angeles Police Protective*

11  *League v. Gates*, 995 F.2d 1469, 1475 (9th Cir. 1993) ("[T]he district court erred in engaging in

12  factfinding contrary to the implicit findings of the jury verdict. Such finding cannot stand as a

13  reason for rejecting equitable relief."). The Court should enjoin future infringing sales of all of

14  Defendant Recon's tourniquets, including the GEN 1, GEN 2, GEN 3, and GEN 4 tourniquets.

15       Moreover, under the terms of Defendant Recon's secured SBA loan, Recon would be in

16  "default" if Recon "does not preserve . . . any of the Collateral...[.]" P13, at 071, Note, at ¶4

17  (DEFAULT: Borrower is in default under this Note if Borrower . . . does not preserve . . . any of

18  the Collateral[.]"). The "Collateral" included Recon's inventory. P13, at 074-077, at ¶4

19  ("COLLATERAL DESCRIPTION. The Collateral in which this security interest is granted

20  includes the following property that Borrower now owns or shall acquire or create immediately

21  upon the acquisition or creation thereof: all tangible and intangible personal property, including,

22  but not limited to: (a) inventory[.]"). Yet, in spite of Defendant Recon's solemn promise to

23  preserve its inventory of tourniquets, Derek Parsons testified at trial that he secretly destroyed its

24  inventory of over 19,000 GEN 3 tourniquets. Trial testimony of Derek Parsons (Dec. 2, 2021). If

25  Derek Parsons is willing to contradict his prior sworn statements and break his solemn promise to

26  the U.S. Small Business Administration, Plaintiff and this Court cannot trust his assertion that

27  Defendant Recon is not going to sell the GEN 1, GEN 2, and GEN 3 tourniquets in the future,

28  especially when he admitted at trial that Recon could start selling those products again if it

wanted to do so.  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011) ("There is no reason to believe that Pylon will stop infringing, or that the irreparable harms resulting from its infringement will otherwise cease, absent an injunction.").

Courts have recognized that, even if a defendant claims it had ceased sales of the infringing products, a permanent injunction is still appropriate.  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.") (internal citation omitted); *Allee v. Medrano*, 416 U.S. 802, 811-12 (1974) ("It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to [their] old ways.' ") (*quoting Gray v. Sanders*, 372 U.S. 368, 376 (1963)).

Otherwise, the defendant would be free to return to its offending conduct, and an injunction takes away the defendant's discretion not to obey the law. *Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp.2d 978, 984 (W.D. Tenn. 2006) ("Even if Synthes were to terminate its sales of the infringing products voluntarily, it would be free to return to its offending conduct, thereby further imposing monetary and intangible losses on Smith & Nephew."), *appeal dismissed*, 269 Fed. Appx. 972 (Fed. Cir. 2008); *Canadian Lumber Trade Alliance v. United States*, 441 F. Supp.2d 1259, 1266-67 (U.S. Ct. Internat'l Trade 2006) ("[T]he entire purpose of an injunction is to take away defendant's discretion not to obey the law."), *aff'd in part, rev'd in part on other grounds*, 517 F.3d 1319 (Fed. Cir.), *cert. denied*, 555 U.S. 819 (2008).

In the case of *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 842 F.2d 1275 (Fed. Cir. 1988), the defendant claimed that it no longer made its infringing PTFE filament, and had stopped selling its infringing LATTICE BRAID packing material. The Federal Circuit reversed the district court's denial of an injunction concerning those infringing products.  842 F.2d at 1281-82.  The Federal Circuit said:

> The fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place. ... "The argument in such circumstances is very simple. If the defendant be honest in his protestations an injunction will do him no harm; if he be dishonest, the court should place a strong hand upon him[.]".

*W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988), (*quoting General Electric Co. v. New England Electric Mfg. Co.*, 128 F. 738, 740 (2d Cir. 1904)).

The evidence in this case indicated that Defendant Recon's China manufacturer still makes the "off-the-shelf" GEN 1 and GEN 2 tourniquets that were being sold before Recon began its infringing sales. And although Defendant Recon claimed it stopped selling the GEN 3 tourniquets, Recon could not say whether the China manufacturer still made the GEN 3 tourniquets, and admitted that Recon could, if it wanted to do so, start selling the GEN 3 tourniquets again. Thus, the mere fact that Defendant Recon claims it is not currently selling the GEN 1, GEN 2, or GEN 3 tourniquets is not a sufficient ground for denying a permanent injunction against future infringement by those products. *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1282 (Fed. Cir. 1988) ("The mere fact that Garlock was no longer making or selling the infringing filament and packing products is not a sufficient ground for denying an injunction against future infringement.").

As in any patent case, in order to establish that Plaintiff CRI is entitled to relief, Plaintiff CRI could only prove that past acts of patent infringement had occurred. Given the realities of discovery in federal litigation, no plaintiff is likely to have evidentiary proof of exactly what the defendant is doing on the day of trial, because the cut-off of discovery in federal litigation prevents a plaintiff from having access to such proof. Therefore, it is "proper for a district court to consider evidence of past harm" in determining whether to issue a permanent injunction. *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). "Past harm to a patentee's market share, revenues, and brand recognition is relevant for determining whether the patentee 'has suffered an irreparable injury'." *Id.* at 861. "Although injunctions are tools for prospective relief designed to alleviate future harm, by its terms the first *eBay* factor looks, in part, at what has already occurred." *Id.* at 862. The only way a plaintiff in a

patent case can establish infringement is to offer proof at trial of the defendant's past infringement, and it is up to the district court to determine the appropriate remedy for the infringement of a patent owner's rights. *Goshen Mfg. Co. v. Hubert A. Myers Mfg. Co.*, 242 U.S. 202, 208 (1916) (enjoining a patent infringement was proper because "further infringement was in effect threatened and could be reasonably apprehended."); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations").

## III.   REMOVAL OF INFRINGING PRODUCTS FROM AMAZON

Defendant Recon offers for sale and sells its infringing products on Amazon.com (through Recon's online Amazon marketplace), and on Recon's own website located at www.reconmedical.com.  ECF No. 171, Pretrial Order, at 9, ¶11; P13, at 042, Declaration of Derek Parsons, at ¶4 ("The Debtor sells its products mainly via online sales through its website, https://reconmedical.com and on Amazon.com.").

As discussed above, a court is authorized by statute to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent." 35 U.S.C. § 283; *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed. Cir.), *cert. denied*, 477 U.S. 905 (1986). Plaintiff CRI's exclusive rights include the exclusive right to sell the patented invention, the exclusive right to offer the patented invention for sale, and the exclusive right to use the patented invention.  35 U.S.C. § 154.

In most patent cases, a patent owner receives an award of damages that includes damages to compensate the patent owner for the infringer's existing inventory. But in this case, the bankruptcy filing by Defendant Recon eliminated any damages award as a potential remedy directed toward Recon's inventory of unsold infringing products. Defendant Recon's CEO Derek Parsons' testimony concerning the alleged removal from Amazon.com of all of Recon's inventory of infringing GEN 3 tourniquets demonstrates that it is possible to remove infringing inventory from Amazon.com before the products are sold.  Trial testimony of Derek Parsons (Dec. 2, 2021); P13-1.

This case presents an unusual circumstance (no monetary damages award for existing inventory) that warrants an injunction requiring Defendant Recon to remove all GEN 4 products

from Defendant's Amazon.com inventory. In accordance with the principles of equity, in order to prevent the violation of Plaintiff's exclusive rights to sell, offer for sale, and use the patented invention, this Court should grant an injunction that includes the removal from Amazon.com of Recon's inventory of infringing products. *Luminara Worldwide, LLC v. Liown Electronics Co*., No. 14-cv-3103 (SRN/FLN), 2015 WL 1967250, at *25 (D. Minn. May 1, 2015) (invoking the equitable powers of the court, and ordering defendant to recall all products found to be infringing on plaintiff's patent rights), *vacated on other grounds*, 814 F.3d 1343, 1354 (Fed. Cir. 2016); *Nike, Inc. v. Qiloo Int'l Ltd.*, No. 2:12-cv-00191-GMN, 2012 WL 9491724, at *2 (D. Nev. Feb. 7, 2012) (ordering U.S. Marshals Service to seize defendant's "promotional display(s), sales equipment, and materials used to facilitate Defendant's infringements").

In view of the jury's implicit adverse credibility determination concerning the testimony of Derek Parsons, the Court's injunction should also require Defendant Recon to remove ***all*** infringing products from Recon's Amazon.com inventory, and not necessarily assume that Mr. Parsons was telling the truth when he testified that he removed and destroyed more than 19,000 GEN 3 tourniquets that were in inventory on the Amazon.com website. *See Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016); *Bartee v Michelin North America, Inc*., 374 F.3d 906, 912-13 (10th Cir. 2004) ("Pursuant to the Seventh Amendment to the Federal Constitution, in fashioning equitable relief, a district court is bound both by a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's verdict"). The Court should order Defendant Recon to stop selling and offering for sale, and to remove from Amazon.com, all infringing Recon products, including all GEN 1, GEN 2, GEN 3, and GEN 4 tourniquets.

In addition, this Court's injunction should also require Defendant Recon to immediately cease all infringing sales on Recon's own website located at www.reconmedical.com, and to remove all infringing products from that website as well.

## IV.   CONCLUSION

Plaintiff CRI respectfully submits that the jury found that all iterations of Defendant Recon's tourniquets, including GEN 1, GEN 2, GEN 3, and GEN 4, infringed on the relevant claims of the '067 Patent, the '253 Patent, and the '807 Patent. Plaintiff CRI should be granted

equitable relief in the form of a permanent injunction enjoining further violation of its intellectual property rights. A permanent injunction should include an order requiring Defendant Recon to remove all infringing products from Amazon.com and from Recon's website located at www.reconmedical.com. CRI's proposed order, provided for the Court's convenience, is attached as Exhibit 1.

Dated December 9, 2021                                SNELL & WILMER L.L.P.


                                    By: /s/ V.R. Bohman
                                        Sid Leach, Esq.
                                        V.R. Bohman, Esq.
                                        3883 Howard Hughes Parkway, Suite 1100
                                        Las Vegas, Nevada  89169

                                        William Y. Klett, III, Esq.
                                        (Admitted Pro Hac Vice)
                                        BURR FORMAN
                                        1221 Main Street, Suite 1800
                                        Columbia, South Carolina 29201

                                        Attorneys for Plaintiff Composite
                                        Resources, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2021, I electronically transmitted the foregoing **PLAINTIFF COMPOSITE RESOURCES, INC.'S POST-TRIAL BRIEF** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

*/s/ Lyndsey Luxford*
An employee of Snell & Wilmer L.L.P.