1
2
3                         UNITED STATES DISTRICT COURT
4                              DISTRICT OF NEVADA
5                                      * * *
6    COMPOSITE RESOURCES INC.,                    Case No. 2:17-cv-01755-MMD-VCF
7              Plaintiff and Counter Defendant,    PERMANENT INJUNCTION ORDER
8         v.
9    RECON MEDICAL LLC,
10             Defendant and Counter Claimant.
11
12   I.      SUMMARY
13          This is a patent, trademark, and unfair competition case about tourniquets used to
14   stop the flow of blood to a body part when that body part is severely injured. (ECF No. 1.)
15   The jury found Defendant Recon Medical LLC's tourniquets infringe on Plaintiff Composite
16   Resources, Inc. ("CRI")'s asserted patents.[1] (ECF No. 253 (jury verdict).) CRI moves for
17   a permanent injunction preventing Recon from selling its infringing tourniquets. (ECF No.
18   246 ("Motion").[2]) Because the applicable factors favor entering a permanent injunction,
19   and as further explained below, the Court will grant the Motion.
20   ///
21

22          [1]The Asserted Patents are United States Patent No. 7,842,067 ("the '067 Patent"),
     United States Patent No. 7,892,253 ("the '253 Patent"), and United States Patent No.
23   8,888,807 ("the '807 Patent"). (ECF No. 171 at 8-9.) CRI owns these three patents. (See
     id.)
24
            [2]This reference is to a summary of the minutes of the proceedings during which
25   CRI's counsel made an oral motion for entry of a permanent injunction following the
     conclusion of the jury trial on patent infringement. The Court ordered both parties to file
26   simultaneous post-trial briefs on CRI's motion for a permanent injunction during those
     same proceedings. (ECF No. 246.) After the parties filed those briefs (ECF Nos. 258, 259),
27   the Court issued a minute order directing the parties to file responses to the arguments
     raised in the other party's brief. (ECF No. 262.) The parties then timely filed those
28   responsive briefs. (ECF Nos. 263, 264.)

## II.    BACKGROUND

The Court resolved some of the claims in this case pretrial, the scope of the remaining issues narrowed when Recon filed for bankruptcy and CRI accordingly adjusted its requested remedy as to its remaining claim, and then a jury found in CRI's favor on the key factual question of patent infringement.

More specifically, before trial, the Court granted summary judgment to CRI on its trademark infringement and federal unfair competition claims. (ECF No. 152 at 16-23.) As pertinent here, the Court specifically found that Recon infringed CRI's Combat Application Tourniquet mark. (*Id.* at 16-22.) The Court further found Recon had engaged in unfair competition because it used the Combat Application Tourniquet mark, told a prospective customer in an email exchange that Recon's tourniquets were "rebranded" CAT tourniquets with "upgrades," and offered its products in the same three colors that CRI does. (*Id.* at 22-23.)

Trial in this case was delayed because of the COVID-19 pandemic. (ECF No. 219 at 1.) After Recon filed for bankruptcy several months before trial, CRI obtained an order from the bankruptcy court stating that it could pursue injunctive relief on its patent infringement claims only before this Court, voluntarily dismissed its claim for monetary damages in this Court and stated it had abandoned any intention of filing a proof of claim in the bankruptcy court for monetary damages for patent infringement. (*Id.* at 1-2.) CRI supported that representation with a declaration from its Chief Financial Officer (and later trial witness) Derek G. Thompson. (ECF No. 217-1.) In that declaration, Mr. Thompson stated that he had analyzed the documents Recon filed in bankruptcy court, and based on that analysis, determined Recon could not pay its unsecured creditors including CRI—and the only source of cash it had to pay those creditors would come from selling products that CRI accused of patent infringement. (*Id.* at 3.) Thus, CRI "concluded that, as a practical matter, it effectively has no remedy for damages based upon Recon's patent infringement." (*Id.* at 3-4.)

1   The Court proceeded to hold a jury trial on patent infringement only. (ECF Nos.

2   242, 243, 245.) The jury found that Recon's Gen 1, Gen 2, Gen 3, and Gen 4 tourniquets

3   infringe CRI's asserted patents. (ECF No. 253.) Outside the presence of the jury, and

4   before the jury delivered its verdict, the Court heard argument from both parties under

5   Federal Rule of Civil Procedure 50. (ECF No. 245.) The Court granted in part, and denied

6   in part, both parties' motions. (*Id.*) The Court granted Recon's motion "as to claims 15 and

7   16 of the '067 Patent." (*Id.*) The Court granted CRI's motion as to: "(1) [Recon's] invalidity

8   defense and counterclaim for declaratory relief to the extent such a counterclaim is still

9   maintained, finding the three patents at issue to be valid and (2) infringement as to

10   [Recon's] Gen 1, Gen 2 and Gen 3 products." (*Id.*) The Court otherwise denied the

11   motions. (*See id.*)

12   After the jury delivered its verdict, and also outside the presence of the jury, the

13   Court held a hearing on CRI's request for a permanent injunction—the only remedy CRI

14   sought in this Court. (ECF No. 246.) Mr. Thompson and Graham Rogers testified on CRI's

15   behalf; Recon did not put on any witnesses. (*See id.*) CRI's marked trial exhibit P13 was

16   admitted for the purposes of the hearing. (*See id.*) That exhibit is Recon's bankruptcy filing

17   and supporting documents. And that exhibit is the same information that Mr. Thompson

18   explained and analyzed in the declaration described above. (ECF No. 217-1.) As noted,

19   CRI's request for a permanent injunction is the subject of this order.

20   **III.   LEGAL STANDARD**

21   Consistent with traditional equitable principles, a patentee seeking a
permanent injunction must make a four-part showing: (1) that it has suffered
22   an irreparable injury; (2) that remedies available at law, such as monetary
damages, are inadequate to compensate for that injury; (3) that, considering
23   the balance of hardships between the plaintiff and the defendant, a remedy
24   in equity is warranted; and (4) that the public interest would not be disserved
by a permanent injunction.
25

26   *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011) (citing *eBay*

27   *Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

28

1    **IV.    DISCUSSION**

2    The Court analyzes each of the four applicable factors, in turn, below. However,

3    before it does, the Court briefly addresses and rejects two arguments Recon raised in its

4    post-trial briefing that fall outside the four-factor framework. Recon first argued that the

5    Court should not rule on CRI's Motion until both parties had trial transcripts available to

6    them. (ECF No. 258 at 6-7.) However, it appears that both parties received any missing

7    trial transcripts before they filed their responsive briefs (ECF Nos. 263, 264) because both

8    of those briefs included citations to trial testimony. Thus, the Court rejects that argument

9    as moot. Second, Recon argues that enjoining it from selling Gen 1, Gen 2, and Gen 3 of

10   its tourniquets violates the automatic stay imposed by the bankruptcy court. (ECF No. 258

11   at 21-22.) However, the Court agrees with CRI (ECF No. 264 at 11) that it may enjoin

12   future acts of infringement, including as to prior generations of Recon's tourniquets. *See*

13   *Voice Sys. & Servs., Inc. v. VMX, Inc.*, Case No. 91-C-88-B, 1992 WL 510121, at *10-*11

14   (N.D. Okla. Nov. 5, 1992) (finding that action seeking "to enjoin post-bankruptcy petition

15   alleged acts of patent infringement" did not violate an automatic bankruptcy stay).

16   **A.    Irreparable Injury**

17   CRI argues it will be irreparably harmed if the Court does not issue an injunction

18   because CRI and Recon are direct competitors, Recon's products infringe CRI's patents,

19   and if Recon is allowed to continue selling its infringing products, CRI will be forced to

20   compete against its own patented inventions—which drive demand for both CRI and

21   Recon's products. (ECF No. 259 at 4-5.) CRI further argues that CRI's customer base is

22   diminished each time Recon makes a sale, allowing Recon to continue selling Recon's

23   tourniquets will harm CRI's reputation, and may encourage others to infringe CRI's

24   intellectual property. (*Id.* at 6-8.) CRI further notes that it has never licensed its patents

25   because it seeks to maintain market exclusivity. (*Id.* at 7-8.)

26   Recon counters that CRI did not prove cognizable irreparable harm and failed to

27   show the requisite causal nexus between the presence of CRI's patented features in

28

1   Recon's products and demand for Recon's products. (ECF No. 258 at 7-16.) Recon further

2   argues the parties are not competitors. (*Id.* at 16-17.) Overall, the Court agrees with CRI.

3       To start, the Court notes that—contrary to Recon's argument—CRI and Recon are

4   direct competitors. The Court already found as such. (ECF No. 152 at 20.) Indeed, the

5   Court noted it was undisputed that both parties sell their competing products on Amazon's

6   online marketplace. (*Id.*) None of the evidence presented at trial tends to show otherwise.

7   And Recon continued to sell its tourniquets post-trial on Amazon at a discount. (ECF No.

8   259-2.) The Court accordingly rejects Recon's unpersuasive argument that it does not

9   compete with CRI.

10      To the extent that Recon is arguing CRI did not sufficiently show that CRI lost sales

11  to Recon because of Recon's infringing sales instead of sales by some other potential

12  infringer, the "fact that other infringers may be in the marketplace does not negate

13  irreparable harm." *Robert Bosch*, 659 F.3d at 1151 (citation omitted). And especially

14  considering the Court's pretrial findings that Recon offers its tourniquets in the same colors

15  as CRI and encouraged actual confusion in at least one instance (ECF No. 152 at 22-23),

16  CRI made a sufficiently cognizable showing of irreparable harm. Mr. Thompson and Mr.

17  Rogers also testified both at trial and during the permanent injunction hearing that CRI

18  competed against Recon. While perhaps they did not put on as detailed a substitution or

19  lost profits analysis as they could have, they certainly reasonably suggested that sales of

20  Recon's infringing products would cause CRI to lose sales.

21      In addition, Recon's argument that CRI did not sufficiently show irreparable harm

22  by showing that its infringing sales take away from CRI's sales does not directly contradict

23  another argument CRI makes in support of its Motion—that CRI will be irreparably harmed

24  if an injunction does not issue because it would effectively be required to compete against

25  its own patented invention. (ECF No. 259 at 4-5.) "Where two companies are in

26  competition against one another, the patentee suffers the harm—often irreparable—of

27  being forced to compete against products that incorporate and infringe its own patented

28

inventions." *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013).[3] Because the jury found infringement here, there is no longer any dispute—Recon's tourniquets incorporate CRI's patented inventions. And while *Douglas Dynamics* contained the caveat "[e]ven absent consumer confusion[,]" *see id.* at 1344, here, the Court found actual consumer confusion (ECF No. 152 at 16-23). Thus, CRI was not required to present extensive analysis as to whether Recon's products are a perfect substitute for CRI's to show it would be irreparably harmed were Recon allowed to continue infringing. Recon is selling a very similar product that a jury found to infringe CRI's asserted patents through at least one overlapping sales channel.

*Douglas Dynamics* also supports CRI's request for a permanent injunction in at least two other ways as well. First, there, like here, the plaintiff did not license its intellectual property. (ECF No. 259 at 7-8.) The Federal Circuit Court of Appeals found that fact weighed in favor of finding irreparable harm because "[e]xclusivity is closely related to the fundamental nature of patents as property rights." *Douglas Dynamics*, 717 F.3d at 1345. Furthermore, CRI's "reputation would be damaged if its dealers and distributors believed it did not enforce its intellectual property rights." *Id.* Similarly, here, the Court could be seen as sanctioning potential infringement by others if it does not enjoin Recon. CRI would be irreparably harmed if forced to continue to compete against Recon's infringing products.

That brings the Court to causal nexus. Contrary to Recon's argument, the Court finds a sufficient causal nexus exists here. To start, Recon's causal nexus argument relies on *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374-75 (Fed. Cir. 2012). (ECF No.

---

[3]Recon attempts to distinguish *Douglas Dynamics* by arguing that CRI is not an innovator like the plaintiff in that case. (ECF No. 258 at 9-10.) While there is some merit to this argument, the Court nonetheless finds it unpersuasive. While CRI did not itself invent the inventions embodied in the asserted patents, it purchased them from the inventor Mark Esposito, who testified on CRI's behalf at trial. CRI owns the asserted patents, the Court found them valid, and the jury found them infringed. Because the patents are valid and infringed, CRI is certainly more of an innovator than Recon, because the Court's validity finding implies novelty and the jury's infringement finding implies that Recon copied CRI. Contrary to Recon's argument, the Court finds *Douglas Dynamics* on point here, and finds that it supports the Court's ultimate decision to issue a permanent injunction.

258 at 10.) However, it is unclear to the Court that this is that type of case—"where the accused product includes many features of which only one (or a small minority) infringe[.]" *Apple*, 695 F.3d at 1374. Compared to the smartphones at issue in *Apple* the tourniquets at issue in this case do not include many features. *See Janssen Prod., L.P. v. Lupin Ltd.*, 109 F. Supp. 3d 650, 700 (D.N.J. 2014), *later modified to permit settlement,* Case No. 10-5954 (WHW), 2016 WL 1029269 (D.N.J. Mar. 15, 2016) ("First, this case is unlike the *Apple* cases because it does not involve "complex, multi-featured" products."). And the jury's infringement verdict certainly does not suggest that only a small minority of the features of Recon's tourniquet infringe—the jury found that all four generations of Recon's tourniquets infringe. (ECF No. 253.) Thus, the Court questions how applicable *Apple* is to this case.

But even assuming *Apple* provides the causal nexus standard, the Court finds that CRI has sufficiently satisfied the causal nexus requirement. "The relevant question is not whether there is some causal relationship between the asserted injury and the infringing conduct, but to what extent the harm resulting from selling the accused product can be ascribed to the infringement." *Apple*, 695 F.3d at 1375. Recon argues CRI has not satisfied this standard because Recon's CEO, Derek Parsons, testified at trial that people buy Recon's tourniquets because of unpatented features unique to Recon's tourniquets, specifically a finger hole, an aluminum instead of plastic windlass, and an integrated pen. (ECF No. 258 at 10-11.) However, in this very same portion of Recon's brief, Recon also attributes Recon's sales to the fact that its tourniquets 'work very well' and are less expensive than CRI's. (*Id.*) Again given the jury's infringement finding, the fact that Recon's tourniquets 'work very well' is actually evidence of the causal nexus between the harm caused by Recon's infringing tourniquet sales and key features of the asserted patents. Generally speaking, and as Mr. Esposito testified at trial, the asserted patent claims cover core features of both CRI and Recon's products, namely tourniquets having an inner and outer strap that apply even circumferential pressure due to that design and

can be tightened down with only one hand because of the windlass. (ECF No. 264 at 4.) Similarly, the fact that consumers allegedly purchase Recon's tourniquets because they are cheaper than CRI's could show that consumers want CRI's patented features for a cheaper price just as easily as it could show that consumers want Recon's tourniquets for the finger hole or other features. Thus, portions of Recon's causal nexus argument undermine its overall causal nexus argument.

Recon's argument also ignores two key elements of Mr. Parsons' testimony. First, Mr. Parsons repeatedly described the features Recon now describes as unpatented in its briefing as patented at trial, even though he admitted upon questioning from the Court at one point in his testimony that Recon only had a design patent for the ornamental finger hole and otherwise had some pending applications—not patents. Second, Mr. Parsons extensively testified that he did not believe his tourniquets infringed the asserted patents. In finding infringement, the jury implicitly rejected Mr. Parsons' testimony regarding noninfringement as not credible. And this ties back to the first element of Mr. Parsons' testimony—about 'patented' features—because that testimony was not credible either. Even after admitting that the features he was attributing consumer demand to were not patented, he continued to describe them as such.[4]

Moreover, and as CRI points out in reply, there was other testimony from other witnesses affirmatively tending to show that demand for both CRI and Recon's products is driven by demand for patented features. Most notably, that testimony came from the inventor listed on the asserted patents, Mr. Esposito, who explained why the tourniquets he created 'work really well' (like Recon's). (ECF No. 264 at 4 (citing trial testimony).)

---

[4]The Court recognizes from the jury verdict in CRI's favor that the jury found Mr. Parsons not credible and therefore analyzes Recon's argument consistent with that implicit finding on the jury's part. *See, e.g.*, *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) ("[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and those claims are based on the same facts, the trial judge must follow the jury's implicit or explicit factual determinations in deciding the equitable claims.") (internal quotation marks, punctuation, and citations omitted). Said otherwise, Recon's argument about a purported lack of causal nexus is primarily unpersuasive because it is based on— and to some extent contradicted by—the unreliable testimony of Mr. Parsons.

1    Unlike prior art tourniquets, the tourniquets reflected in the asserted patents can be

2    operated with one hand, and the two-strap design applies more consistent and therefore

3    less painful or injurious pressure to cut off the flow of blood to the injured body part. (*Id.*)

4    These features are captured in the asserted patents, and again, the jury found that

5    Recon's tourniquets infringed the asserted patents. (*Id.*; *see also* ECF No. 253.) Thus,

6    Recon's argument that people buy its tourniquets because they 'work really well' and are

7    cheaper than CRI's is more persuasive than its argument that people buy them for the

8    finger hole, aluminum windlass, or pen. And all of this shows the requisite casual nexus.

9          For all of these reasons, the Court finds that CRI will be irreparably harmed if the

10   Court does not issue a permanent injunction here.

11         **B.  Inadequacy of Monetary Damages**

12         Moving to the second prong of the permanent injunction analysis, CRI argues it

13   lacks an adequate remedy at law because the documents filed in Recon's bankruptcy case

14   indicate Recon has no ability to pay CRI damages, particularly considering that Recon's

15   bankruptcy plan contemplates paying creditors through continued infringement. (ECF No.

16   259 at 9-12.) CRI further argues that it would be difficult to quantify the loss of market

17   share, goodwill, and brand recognition caused by Recon's infringement, and CRI has

18   never licensed its patents—and does not intend to—so damages would not be an

19   adequate substitute for an injunction. (*Id.* at 12-13.) Recon counters that CRI chose not to

20   pursue monetary damages, so it cannot show it lacks an adequate remedy at law. (ECF

21   No. 258 at 17-19.) The Court again agrees with CRI, though again finds some merit to

22   Recon's argument.

23         Recon's argument is somewhat meritorious because there is no doubt CRI chose

24   not to pursue monetary damages—and that makes this case somewhat unusual.

25   However, Recon's argument on this point is ultimately unpersuasive both because it

26   seems to assume CRI faced unconstrained choices and ignores the contents of its own

27   bankruptcy filings. Said otherwise, Recon selectively ignores why CRI chose not to seek

28

monetary damages. As CRI argues (ECF No. 264 at 10-11), CRI's decision not to seek monetary damages was forced by Recon's decision to file bankruptcy. CRI basically faced a Hobson's choice: either abandon this case altogether after years of litigation or get an order from the bankruptcy court that would only allow it to pursue injunctive relief in this Court because there was no question it could no longer seek monetary damages in this case. It is simply unreasonable for Recon to suggest that CRI should lose its ability to pursue injunctive relief here because Recon filed for bankruptcy.

Moreover, both the declaration of Mr. Thompson (ECF No. 217-1) and trial exhibit P13 illustrate another key reason why CRI chose not to pursue monetary damages against Recon: Recon is unable to pay damages, particularly considering that its restructuring plan contemplates continuing to infringe CRI's patents in order to pay its bills. If, as indicated by Mr. Thompson's declaration and trial exhibit P13, Recon is unable to pay damages to CRI, the Court cannot see how CRI has an adequate remedy at law. Recon's inability to pay instead points towards the only adequate remedy being a permanent injunction. *Cf. Robert Bosch*, 659 F.3d at 1154-55 (finding that inability to pay tends to support an irreparable harm finding). Moreover, CRI's contention that it never licenses its patents is unrebutted, and that too tends to support a finding that any remedy at law would not adequately compensate CRI for Recon's infringement. *See Douglas Dynamics*, 717 F.3d at 1344-45 (finding that the plaintiff's decision not to license its patents contributed to the plaintiff's showing of reputational harm, and later finding, in turn, that the reputational harm the plaintiff had shown contributed to a finding that the plaintiff lacked an adequate remedy at law).

In sum, while Recon's argument on inadequate remedy at law is clever, the Court need not abandon all common sense. Recon cannot pay CRI damages and continues to infringe CRI's patents as it awaits this order. (ECF No. 259-2.) CRI does not have an adequate remedy at law. This factor also weighs in favor of granting a permanent injunction.

1

**C. Balance of Hardships**

2      Turning to the third prong, CRI argues that the balance of hardships tips in its favor

3   because it further developed the patented inventions invented by Mark Esposito and

4   invested in domestic manufacturing facilities to produce its tourniquets, whereas Recon

5   simply copied CRI's tourniquets and had them inexpensively produced abroad, giving

6   Recon a cost advantage. (ECF No. 259 at 13-14.) Recon counters that the balance of

7   hardships tips in its favor because there is no evidence that Recon's infringement caused

8   any hardship for CRI, and issuing an injunction will harm Recon—specifically, prohibiting

9   Recon from selling its infringing tourniquets will make Recon's business untenable and

10  force it to lay off its employees. (ECF No. 258 at 19-20.) The Court again ultimately agrees

11  with CRI though it again finds Recon's argument somewhat persuasive.

12     Entering an injunction here will work a hardship on Recon because it may have to

13  cease operations and lay off its employees. However, both the Court's Rule 50 ruling and

14  the jury's verdict indicate that Recon's entire tourniquet business is based on

15  infringement—and has been since Mr. Parsons started Recon by selling "off-the-shelf"

16  tourniquets that he purchased from a foreign manufacturer. The Court's Rule 50 finding

17  on validity also indicates that Mr. Esposito actually invented something that deserves the

18  exclusivity CRI seeks here. Even though entering a permanent injunction will work a

19  hardship on Recon, the balance of hardships nonetheless favors CRI because CRI is—

20  and has been for nearly five years now—attempting to assert its valid patent right of

21  exclusivity against Recon while Recon infringes CRI's patents, trademark, and competes

22  unfairly against CRI. *See, e.g.*, *Voice Sys. & Servs., Inc.*, 1992 WL 510121, at *9 ("The

23  balance of hardships tips in favor of VMX, who has developed patentable innovations, and

24  who has invested in substantial research and development, rather than VSSI, who has

25  built its business by infringing VMX's patents."); *SATA GmbH & Co. KG v. USA Italco Int'l

26  Ltd.*, Case No. 3:18-cv-00351-MMD-WGC, 2019 WL 4601513, at *6 (D. Nev. Sept. 20,

27  2019) ("[W]ithout an injunction, SATA will continue to be harmed because Defendants are

28

likely to continue to infringe on SATA's marks and designs.").[5] Overall, this third prong of the analysis also favors issuing a permanent injunction.

### D.  Public Interest

CRI finally argues that the public interest favors issuing an injunction because public policy favors protection of the rights secured by valid patents. (ECF No. 259 at 14-15.) Recon counters that the public interest would be served if it were allowed to continue selling its infringing tourniquets because they have been involved in saving lives, and CRI failed to offer evidence that it could satisfy the demand for tourniquets sold by Recon if Recon was forced to remove its tourniquets from the marketplace. (ECF No. 258 at 20-21.) Like the other three factors, the Court again agrees with CRI.

"[T]he public often benefits from healthy competition. However, the public generally does not benefit when that competition comes at the expense of a patentee's investment-backed property right." *Apple*, 809 F.3d at 647. Again, Recon's Gen 1, Gen 2, Gen 3, and Gen 4 tourniquets infringe CRI's valid patents. (ECF Nos. 253, 255.) Recon engaged in unfair competition with CRI and infringed CRI's trademark. (ECF No. 152 at 16-23.) Here, the public interest prong weighs in favor of granting CRI a permanent injunction because Recon's unfair competition comes at the expense of CRI's investment-backed property rights.

In sum, because all four factors weigh in favor of granting CRI a permanent injunction, the Court grants the Motion. Recon is hereby permanently enjoined as specifically described below in Section V.

### V.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines

---

[5]This second citation is more pertinent to the Court's prior trademark infringement finding in this case.

that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that CRI's motion for a permanent injunction is granted.

It is further ordered that Recon Medical, LLC, and its past, present, or future officers, agents, affiliates, vendors, suppliers, consultants, advisors, distributors, sales representatives, licensees, servants, employees, confederates, attorneys, manufacturers, successors, assigns, and any persons acting in concert or participation with any of them are hereby permanently enjoined and restrained as follows:

1. Recon Medical, LLC and all others bound by this injunction shall not use, promote, advertise, market, monetize, sell, offer for sale, distribute, transfer, manufacture, have made, take a license or assignment in, or license or offer for license its Gen 1, Gen 2, Gen 3, or Gen 4 products, regardless of name or designation used in connection with such tourniquets or products.

2. Recon Medical, LLC and all others bound by this injunction shall immediately and permanently remove its Gen 1, Gen 2, Gen 3, and Gen 4 products, regardless of name or designation used in connection with such tourniquets or products, from any and all websites and online marketplaces, including but not limited to Amazon.com and www.reconmedical.com.

3. Recon Medical, LLC and all others bound by this injunction are hereby enjoined from importing Gen 1, Gen 2, Gen 3, and Gen 4 tourniquets into the United States, regardless of name or designation used in connection with such tourniquets or products.

The Clerk of Court is directed to close this case.

DATED THIS 6th Day of January 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE